**UNITED STATES of America, Appellee,**

**v.**

**Richard SHANDELL,**
**Defendant-Appellant.**

**No. 1290, Docket 86–1052.**

United States Court of Appeals,
Second Circuit.

Argued May 14, 1986.

Decided Sept. 11, 1986.

Philip Russotti, New York City (Russotti & Barrison, New York City, of counsel), for defendant-appellant.

Maria T. Galeno, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., and Bruce A. Green, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, CARDAMONE and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Richard Shandell appeals from a judgment of the United States District Court

for the Southern District of New York convicting him after a jury trial before Judge Owen on one count of conspiracy to commit bank larceny, 18 U.S.C. § 371, two counts of bank larceny, 18 U.S.C. §§ 2113(a) and 2, and four counts of making, uttering, and possessing forged securities of a private entity, 18 U.S.C. §§ 511 and 2. We affirm.

Shandell was convicted for his part in a scheme by means of which one Norman Siegel, Shandell's long-time homosexual lover, embezzled over $700,000 from E.F. Hutton & Co. to give to Shandell. Between 1971 and 1980, Siegel had given Shandell over $30,000 through personal loans and credit card privileges, on Shandell's promise of repayment when he received a supposed inheritance from his grandmother. Although Siegel's credit was exhausted by 1980 and the promised inheritance had not materialized, Shandell continued to ask for money. Siegel then began stealing from Hutton.

As an Assistant Vice President in Hutton's error correction department, Siegel could write checks up to $5,000 in order to correct discrepancies among Hutton accounts or in accounts with other brokerage houses. Using this authority, Siegel forged checks to satisfy Shandell's persistent requests for money. Either Shandell or one of his employees, Janet Wiedhopf or Daphne Davis, would come to Siegel's office, pick up the checks, and deposit them in Siegel's checking account. At the same time, Siegel would give Shandell personal checks drawn on his account in order that Shandell could withdraw the deposited funds. Initially, Siegel used his personal checking account at the Manufacturers Hanover Trust Company for this purpose, but Manufacturers balked at allowing Shandell to deposit checks with corporate payees into Siegel's personal account. Shandell then opened a checking account in Siegel's name at a branch of the National Westminster Bank. Shandell persuaded an employee of Westminster Bank to bend its rules so as to permit the deposit of corporate-payee checks into Siegel's account and the withdrawal of uncleared funds from the account. Approximately 183 fraudulent checks with a total value between $750,000 and $1,000,000 passed through either the Manufacturers Hanover or Westminster banks.

Shandell testified that, although he and his employees negotiated the Hutton checks, most of which were fraudulently endorsed by Siegel, he never knew the checks were stolen and never received any of the proceeds. He admitted that he, Davis, and Wiedhopf deposited and cashed checks for Siegel, but claimed that they always mailed the money back to Siegel. Shandell testified that his apparent wealth—he owned several luxury cars and expensive racehorses—was attributable to his success in gambling on horses. Davis, appellant's housekeeper, also testified, and told the jury that she sometimes cashed checks drawn on Siegel's account following which she mailed the cash to Siegel. The jury rejected the testimony offered by the defense and convicted Shandell on all counts.

■ Appellant's initial contention on appeal is that the misconduct with which he was charged—entering Westminster Bank with intent to commit a larceny by depositing stolen checks and obtaining the proceeds of those checks—does not fall within the ambit of 18 U.S.C. § 2113(a). Section 2113(a) reads in pertinent part:

Whoever enters or attempts to enter any bank ... with intent to commit in such bank ... any felony affecting such bank ... in violation of any statute of the United States, or any larceny [shall be fined, etc.].

Appellant argues, relying on *United States v. Wright*, 365 F.2d 135 (7th Cir. 1966), *cert. denied*, 386 U.S. 918, 87 S.Ct. 879, 17 L.Ed.2d 789 (1967), that the limiting language "affecting such bank" applies not only to "any felony" but also to "any larceny". Under appellant's theory, the larceny which he is alleged to have committed affected only Hutton, not Westminster Bank.

Assuming, without deciding, that appellant's interpretation of the statute is correct, a proposition which is open to debate,

see *Jones v. United States,* 419 F.2d 515, 517 (8th Cir.1969), *cert. denied,* 398 U.S. 949, 90 S.Ct. 1866, 26 L.Ed.2d 288 (1970); *Smith v. United States,* 356 F.2d 868, 870–71 (8th Cir.), *cert. denied,* 385 U.S. 820, 87 S.Ct. 44, 17 L.Ed.2d 58 (1966), his contention nonetheless is without merit. Under well-established rules of commercial law, Westminster Bank is subject to suit by the bank upon whom the Hutton checks were drawn for falsely warranting the signatures of prior endorsers and its own good title. *KOUS-TV, Inc. v. Spot Time, Ltd.,* 599 F.Supp. 90, 92 (S.D.N.Y.1984); N.Y.U.C.C. § 4–207(2); *see* J. White & R. Summers, *Uniform Commercial Code* 598–601 (2d ed. 1980). Appellant's larcenous conduct clearly affected Westminster Bank and fell within the proscription of 18 U.S.C. § 2113(a).

Appellant's second contention is that the trial court erroneously refused to order the Government to grant Janet Wiedhopf use immunity so that she would be willing to testify as a defense witness. Wiedhopf had been granted immunity for her testimony before the grand jury. However, her testimony led the Government to subpoena handwritten exemplars from her, and, when her handwriting was found to match several of the forged endorsements on the Hutton checks, the Government notified her that she had become a target of their investigation. Although the prosecutor originally had intended to have Wiedhopf testify, she decided against it and did not name Wiedhopf as a prospective Government witness. At the close of the Government's case, Wiedhopf's attorney informed the prosecutor that his client had been subpoenaed as a defense witness, and requested immunity for that testimony. The request was refused, and Wiedhopf declined to testify on Fifth Amendment grounds.

Appellant claims that the trial court's refusal to order the Government to grant Wiedhopf immunity, or even to hold a hearing on the request, was a denial of due process. We disagree. Very few situations will impose a duty on the Government to grant a defense witness immunity.

*Grochulski v. Henderson,* 637 F.2d 50, 52 (2d Cir.1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1383, 67 L.Ed.2d 358 (1981). To warrant an immunity request, it must be shown that "the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and ... the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source." *United States v. Burns,* 684 F.2d 1066, 1077 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). Where, as here, the witness herself is a prosecution target, there can be no claim of discrimination or overreaching. *See United States v. Turkish,* 623 F.2d 769, 778 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981).

Moreover, appellant's request, coming as it did at the close of the Government's case, was untimely, *see Turkish, supra,* at 777–78, and it appears that Wiedhopf's testimony would have been largely cumulative. The court accepted proffers of testimony from both parties and heard extensive oral argument. It did not err in deciding that there was no need for an evidentiary hearing. *See id.* at 778.

Appellant's final claim is that he was denied his speedy trial rights under 18 U.S.C. § 3161. The time overrun of which appellant complains resulted from his own request for a thirty-day continuance after an anticipated superseding indictment was filed. A thirty-day extension does not automatically follow the filing of a superseding indictment; it may be granted upon the defendant's request if the "ends of justice" warrant it. *See United States v. Rojas-Contreras,* — U.S. —, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985); 18 U.S.C. § 3161(h)(8). Appellant cannot now contend that the Government's case should be dismissed because of the additional time which he himself insisted was necessary. This, as the district court stated, would be "mousetrapping of a rather egregious order." *See United States v. Bufalino,* 683

F.2d 639, 646 (2d Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983).

The judgment of the district court is affirmed.