**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael PARIS, Defendant-Appellant.**

**No. 86–1030.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1986.

Decided March 6, 1987.

Amended Sept. 4, 1987.

Eb F. Luckel, Jr., San Francisco, Cal., for plaintiff-appellee.

Ephraim Margolin, San Francisco, Cal., for defendant-appellant.

Before WRIGHT, SNEED and KOZINSKI, Circuit Judges.

## ORDER

The panel has voted to amend its opinion, filed March 6, 1987. The amended opinion and Judge Kozinski's amended dissent are attached. This opinion supersedes the opinion published at 812 F.2d 471 (9th Cir. 1987).

With the opinion so amended, the panel as constituted in the above case has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for en banc rehearing, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed. R.App.P. 35(b).

The petition for rehearing is denied, and the suggestion for a rehearing en banc is rejected.

## AMENDED OPINION

SNEED, Circuit Judge:

Michael Paris, an Internal Revenue Service attorney, was convicted of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiracy to distribute cocaine, 21 U.S.C. § 846. He appeals, alleging numerous errors. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

On the evening of August 27, 1985, Gary Hafley, an undercover agent working for the Drug Enforcement Administration (DEA), met with Frederick DePalm in Emeryville, California, to purchase two kil-ograms of cocaine for $80,000. DePalm did not bring the cocaine, but both men agreed to meet later that night across the bay in San Francisco. Surveillance agents followed DePalm to San Francisco where they observed him meeting with appellant Paris at Paris's residence. After talking with Paris, DePalm met Hafley in front of a house on 23rd and Guerrero Streets.

DePalm told Hafley that he "had just come from the source's house," and that although the deal could not take place that night, the source had provided a sample. DePalm also said that the exchange had to take place the following evening or after Labor Day because the "source of supply was going to be back East for his parents' fiftieth wedding anniversary." Paris went to Cleveland, Ohio over the Labor Day weekend for his parents' fiftieth wedding anniversary.

Negotiations resumed on September 5. Hafley proposed to conduct the exchange himself. DePalm rejected this idea, telling Hafley that the "source was an attorney who didn't want to be seen." Eventually they agreed upon terms, and DePalm called his source to confirm their arrangement. DePalm then told Hafley the source would arrive in thirty minutes with one kilogram of cocaine, driving "a red Subaru or a white Toyota." Hafley left to notify other officers of the plan, and returned. Shortly thereafter, as Paris arrived in a white Toyota, DePalm said, "The guy is here." DEA agents then arrested DePalm and Paris. Hafley searched Paris's car and found a briefcase containing approximately one kilogram of cocaine.

Paris's defense theory at trial was that DePalm "set him up." He testified that the briefcase had been placed in his car by a man named "Michael" who asked him to deliver it to DePalm. Paris subpoenaed DePalm and claimed that DePalm would have admitted under oath that he set up Paris or would have identified "Michael" as the source of the cocaine. DePalm, however, facing the same charges as Paris, invoked his Fifth Amendment privilege against self-incrimination, and the trial

judge excused him from testifying. The court later admitted in evidence DePalm's statements to Hafley as declarations of a co-conspirator under Fed.R.Evid. 801(d)(2)(E), and these statements constituted the chief evidence of Paris's guilt.

## II.

## DISCUSSION

### A. *Framework of Discussion*

To provide the framework of this portion of our opinion, it is necessary to set forth briefly a description of the alleged errors by the trial court upon which the appellant relies to obtain a reversal of his conviction. As will be apparent, appellant directs most of his fire at the very damaging statements made by DePalm to agent Hafley. Not only should these statements not have been admitted, but their admission amounted to constitutional error, argues the appellant. The remainder of appellant's alleged errors are of lesser importance. We now set forth each of appellant's arguments.

First, appellant attacks DePalm's use of the Fifth Amendment privilege. It was an invalid assertion and, if valid, its assertion violated appellant's Sixth Amendment rights.

Next, appellant contends that the admission of DePalm's statements was contrary to Fed.R.Evid. 801(d)(2)(E) and in violation of Fed.R.Evid. 806.

Third, the appellant argues that De-Palm's statements, even if otherwise admissible, would violate the Confrontation Clause and deprive him of due process.

Fourth, appellant complains that the exclusion of his offered testimony of a former DEA agent was error.

Fifth, appellant insists that he was entitled to an instruction to the jury requiring that it agree on a single set of facts to prevent his conviction as a member of a conspiracy with respect to which the jury was not unanimous.

Finally, appellant decries the sentence he received on the ground of disparity with that given DePalm.

We shall discuss each of these contentions in the order set forth here.

### B. *Right to Compulsory Process*

As set out above, Paris claims that De-Palm's assertion of the privilege against self-incrimination was invalid, and thus the court's refusal to compel DePalm to testify violated Paris's Sixth Amendment right to compulsory process to secure the attendance of a witness. Paris also argues, in the alternative, that his Sixth Amendment right to compulsory process should have overridden DePalm's Fifth Amendment right not to testify.

### 1. *Standard of Review*

Initially, we note that Paris failed to raise his compulsory process claim below. Paris filed a pretrial motion objecting to the introduction of DePalm's statements on various grounds, including the claim that admission of the statements would violate the Confrontation Clause because De-Palm's assertion of the privilege did not render him "unavailable." Paris never argued, however, that DePalm's exercise of his privilege against self-incrimination was invalid or that his unavailability would violate Paris's right to compulsory process. When no objection has been made, we review a challenge on appeal under the "plain error" standard. *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986). Reversal for plain error occurs only in the exceptional situation where it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process. *Id.*

### 2. *Validity of DePalm's Fifth Amendment Privilege*

To assert the privilege against self-incrimination, the claimant must be "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *United States v. Apfelbaum*, 445 U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980) (quoting *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968)). Prior to trial, DePalm pleaded guilty to possession

with intent to distribute, and the government promised to dismiss the conspiracy charge. He had not, however, been sentenced. A convicted but unsentenced defendant retains his Fifth Amendment rights.[1] *United States v. Miller*, 771 F.2d 1219, 1235 (9th Cir.1985); *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978). The trial court did not err in allowing DePalm to rely on the privilege.

### 3. *Sixth Amendment Versus Fifth Amendment*

■■■ To support his claim that his Sixth Amendment right to compulsory process overrides the valid assertion of the Fifth Amendment privilege, Paris argues that the trial judge should have required the government to grant immunity to DePalm, or should have granted a continuance until after DePalm's sentencing. We have held, however, that "[t]he Sixth Amendment right of an accused to compulsory process to secure the attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege. Nor is an accused entitled to compel a prosecutor to grant immunity to a potential defense witness to get him to testify." *Trejo-Zambrano*, 582 F.2d at 464 (citation omitted). We reject the argument that the trial court erred in failing to grant a continuance. To obtain a continuance a defendant must move for one. *United States v. Steffen*, 641 F.2d 591, 595 (8th

Cir.), *cert. denied*, 452 U.S. 943, 101 S.Ct. 3091, 69 L.Ed.2d 959 (1981). Paris did not do so, and the court's failure *sua sponte* to delay the trial was not plain error.[2] Paris was not denied his Sixth Amendment right to compulsory process.

### C. *Admission of DePalm's Statements Under the Federal Rules*

Paris next attacks the admission of DePalm's out-of-court statements on the ground that it was contrary to certain Rules of Evidence.

#### 1. *Foundational Requirements Under 801(d)(2)(E)*

It has been said that Rule 801(d)(2)(E) means that "before admitting a statement of a co-conspirator into evidence against a defendant, the court must have *independent evidence* of the existence of the conspiracy and *of the defendant's connection to it*, and must conclude that the *statement was made both during and in furtherance of the conspiracy.*" *United States v. Layton*, 720 F.2d 548, 555 (9th Cir.1983), *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984) (italics added). Findings of fact with respect to the foundational requirements for admission of co-conspirator statements, we have held, are subject to a clearly erroneous standard of review. *See United States v. Smith*, 790 F.2d 789, 794 (9th Cir.1986). Paris focuses his attack on the two italicized requirements appearing above.

---

**1.** Paris argues that as a result of the government's promise to dismiss the conspiracy count, DePalm could not reasonably fear that his testimony would subject him to further criminal liability on that count. However, because DePalm retained his right not to testify until after sentencing on the first count, we need not reach the question of the effect of the government's promise to dismiss.

**2.** The only mention in the record of a continuance in this context appears in Paris's memorandum to exclude DePalm's statements, as part of an argument that DePalm was not "unavailable" as then-current confrontation clause law required. In any event, a continuance until DePalm had been sentenced would not have aided Paris. The possibility of state criminal liability would still have allowed DePalm to invoke his

privilege against self-incrimination. *United States v. Berberian*, 767 F.2d 1324, 1326 (9th Cir.1985); *see* Cal. Health & Safety Code § 11350 (West Supp.1986) (possession for sale of designated controlled substances); Cal.Penal Code § 182 (West Supp.1986) (conspiracy). When a continuance is requested to obtain a witness, the accused is required to show, *inter alia*, that the witness can probably be obtained if the continuance is granted. *United States v. Smith*, 790 F.2d 789, 796 (9th Cir.1986). Paris, however, did not establish that DePalm "had unconditionally agreed to testify." *United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir. 1978). Without a showing that DePalm had actually agreed to testify, the trial court had no reason to believe that Paris would benefit if a continuance were granted.

### a. Independent Evidence of Connection to Conspiracy

■ To establish Paris's connection to the conspiracy, "[t]he government must show only substantial evidence—not evidence beyond a reasonable doubt—independent of the coconspirators' statements which demonstrates [Paris] has at least a slight connection to the existing conspiracy." *United States v. Rabb,* 752 F.2d 1320, 1325 (9th Cir.1984), *cert. denied,* 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985). The government has met its burden. First, surveillance agents observed that DePalm met with Paris just before DePalm provided a cocaine sample to Hafley. Second, Paris arrived with one kilogram of cocaine at 23rd and Guerrero Streets at the time the cocaine purchase was to take place. This is sufficient independent evidence to connect Paris to the conspiracy.

### b. During and in Furtherance

■ To satisfy this requirement, the statements must " 'further the common objectives of the conspiracy,' or 'set in motion transactions that [are] an integral part of the [conspiracy].' " *Layton,* 720 F.2d at 556 (quoting *United States v. Fielding,* 645 F.2d 719, 726 (9th Cir.1981) (emphasis omitted)). Paris contends that statements made by a drug dealer to a customer that tend to identify the dealer's source are not made in furtherance of the conspiracy, because it could not have been a common objective of the conspiracy to reveal the source's identity to a customer. This argument is misguided. DePalm made each of his statements to ensure Hafley's continued interest in purchasing cocaine from DePalm's source. The statements furthered the conspirators' common objective: the sale of cocaine. *See United States v. Eaglin,* 571 F.2d 1069, 1083 (9th Cir.1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978) (statements made to keep a person abreast of the conspirators' activities, to induce continued participation in the conspiracy, or to allay fears are made in furtherance of the conspiracy).

### 2. Violation of Fed.R.Evid. 806

■ Paris next argues that under Rule 806, DePalm's statements were inadmissible because Paris had no opportunity to cross-examine DePalm. Rule 806 provides, in part, that when a statement has been admitted into evidence under Rule 801(d)(2)(E), the defendant may question the declarant on direct examination as if on cross-examination. However, Rule 806 applies by its own terms only if the defendant is otherwise able to call the declarant as a witness. "The rule confers no absolute right to cross-examination, because hearsay statements may often be admitted despite the unavailability of the declarant." *Miller v. Keating,* 754 F.2d 507, 510 (3rd Cir.1985).

### D. Confrontation and Due Process Objections

Paris next contends that the admission of DePalm's statements violates both the Sixth Amendment Confrontation Clause and the Due Process Clause of the Fifth Amendment.

### 1. The Confrontation Clause

This circuit formerly required two additional conditions to be satisfied before coconspirator statements, admissible under Rule 801(d)(2)(E), could also be deemed admissible under the Confrontation Clause. First, the government had either to produce the co-conspirator or to show that he was unavailable. Second, the statements had to satisfy an independent test of reliability. *See, e.g., United States v. Fleishman,* 684 F.2d 1329, 1338–39 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

■ In two recent cases, however, the Supreme Court has eliminated both these additional requirements. See *Bourjaily v. United States,* —— U.S. ——, ——, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987) (reliability); *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 1126, 89 L.Ed.2d 390 (1986) (unavailability). The effect of these two cases is to render the Sixth Amendment requirements for admitting co-conspirator statements "identical" to those of

Rule 801(d)(2)(E). *See Bourjaily,* —— U.S. ——, 107 S.Ct. at 2783. The Confrontation Clause is therefore of no assistance to Paris.

### 2. *Due Process*

■ Paris correctly cites *United States v. Alessio,* 528 F.2d 1079, 1082 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976), for the proposition that we will reverse a conviction on due process grounds if the "appellant was denied a fair trial because of the government's refusal to seek immunity for defense witnesses." There is no evidence beyond an ambiguous offer of proof made by Paris's attorney that DePalm would have retracted his statements that implicated Paris and would have testified that Paris was "set up." Nor does the evidence support the proposition that the government intentionally caused DePalm to invoke his Fifth Amendment privilege.[3] Finally, Paris never asked the prosecutor to grant DePalm immunity. *See United States v. Garner,* 663 F.2d 834, 840 (9th Cir.1981) (outlining proper procedure for immunity request), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1750, 72 L.Ed.2d 161 (1982). The government's refusal *sua sponte* to grant immunity to DePalm did not deprive Paris of a fair trial.

### E. *Exclusion of a Defense Witness*

Paris offered the testimony of former DEA agent Gerald Scotti, who would have given his opinion that dealers such as DePalm do not reveal the true identity of their source. The court refused to allow Scotti's testimony.

---

**3.** *See United States v. Patterson,* 819 F.2d 1495, 1506 (9th Cir.1987). The record contains no evidence that an agreement not to testify was part of DePalm's plea bargain. *See id.* (finding similar claim "unsubstantiated"). Nor does it contain any evidence supporting the dissent's assertion that the prosecutor deliberately tried to keep DePalm's testimony from the jury. *Post* at 403. In fact, in declarations submitted after oral argument in this case, the prosecutor makes clear—and DePalm's counsel confirms—that the government *wanted* DePalm to testify at Paris's trial. DePalm refused.

The dissent challenges our reference to these declarations on the ground that they are outside the record. We refer to them, however, solely to rebut the dissent's contrary assertion, which is based not on any evidence in the record, but on inconclusive statements made at oral argument. *Id.* Moreover, the government submitted these declarations only after *the defendant* filed a post-opinion affidavit that created a very misleading impression.

The government's declarations were not, as the dissent puts it, ambiguous or "slippery." On the contrary, the defendant's affidavit was an ambiguous statement by DePalm's counsel, Serra, saying that his client's refusal to testify had been "a prerequisite to his plea." The defendant argued that this meant that the government had conditioned DePalm's plea bargain on his agreement not to testify. That would very likely have been prosecutorial misconduct.

The government submitted its declarations to dispel this impression. It turned out that DePalm (not the government) was conditioning the plea bargain on an agreement that he would not testify. DePalm and his counsel were prepared to "go to trial merely to preserve our [sic] silence." Further Declaration of J. Serra at 2. This is a far cry from defendant's allegation that the prosecutor prevented a ready and willing witness from testifying. The government was not being "slippery" in refuting this allegation.

Nor is there now a factual issue that the district court must resolve. It was defendant's burden to make a prima facie showing *on the record* of prosecutorial misconduct. *See Patterson,* 819 F.2d at 1506. Defendant made no such showing. The dissent culled some comments from oral argument; the defendant attempted to "supplement" the record; and finally the government responded with its own declarations. None of this satisfied defendant's burden. To the contrary, defendant's ambiguous affidavit, followed by the government's clarification, simply reinforced our initial conclusion that no misconduct had occurred.

Finally, we reject the dissent's suggestion that the use of a co-conspirator's statements in the prosecution's case-in-chief somehow obligates the government to immunize the co-conspirator at trial. "Prosecutorial misconduct" alone gives rise to a claim for defense witness immunity. *United States v. Disla,* 805 F.2d 1340, 1353 (9th Cir.1986); *United States v. Touw,* 769 F.2d 571, 573 (9th Cir.1985); *accord United States v. Shandell,* 800 F.2d 322, 324 (2d Cir.1986). The mere introduction of co-conspirator statements satisfying evidentiary and Confrontation Clause rules cannot constitute misconduct. It therefore confers no right to defense witness immunity. *See United States v. Weiner,* 578 F.2d 757, 771 & n. 12 (9th Cir.) (per curiam), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); *see also United States v. Tindle,* 808 F.2d 319, 326–28 (4th Cir.1986) (rejecting immunity claim on similar facts); *United States v. Adams,* 759 F.2d 1099, 1107 (3d Cir.) (calling similar claim "without merit") (dictum), *cert. denied,* 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).

■ A district court's exclusion of an expert will be upheld unless manifestly erroneous. *United States v. Byers*, 730 F.2d 568, 571 (9th Cir.), *cert. denied*, 469 U.S. 934, 105 S.Ct. 333, 83 L.Ed.2d 270 (1984). Paris argues that admission of Scotti's testimony would have assisted both judge and jury. First, it is within the sound discretion of an experienced judge to determine whether or not expert testimony about a drug dealer's standard behavior would assist him in understanding the facts or issues. Second, DEA agent Hafley on cross-examination had already testified that dealers only volunteer information about a source to convince a purchaser that a relationship with the source exists, but dealers are "not going to reveal to the normal drug buyer who the source is." Reporter's Transcript at 293–95. Third, the relevance of Scotti's testimony is questionable, because DePalm did *not* expressly reveal Paris's identity. Exclusion of Scotti's testimony was not manifestly erroneous.

### F. *Jury Instructions*

When the nature of the evidence presented at trial results in a variance between the proof and the indictment, circumstances may warrant an instruction requiring agreement on a single set of facts. *See United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir.), *modifying* 698 F.2d 375 (9th Cir.1983). Paris contends that the court erred by not giving such an instruction here. We review a district court's formulation of jury instructions for an abuse of discretion. *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir.1982).

■ Our review of the record reveals but a single conspiracy to sell cocaine to DEA agent Hafley. This corresponds to the conspiracy charged in the indictment. Paris has failed to demonstrate a "genuine possibility of jury confusion" that could have resulted in conviction for a conspiracy not specified in the indictment. *Echeverry*, 719 F.2d at 975. Under such circumstances, the district court's general instruction

on unanimity was sufficient without a further statement that a single set of facts must be agreed upon. *United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir.1983).

■ Paris also claims that the court erred by refusing to adopt his "stake-in-the-outcome" instruction. To connect Paris with the conspiracy, the evidence must have shown that he had knowledge of the conspiracy and acted in furtherance of it. *United States v. Guerrero*, 756 F.2d 1342, 1349 (9th Cir.1984). Casual association with members of the conspiracy is not sufficient. *United States v. Cloughessy*, 572 F.2d 190, 191 (9th Cir.1977). The trial judge instructed the jury that "to find against Paris, you must find that [he] joined the conspiracy, and did so knowing of the unlawful plan and intending to help carry it out." This formulation adequately states the law and therefore was not an abuse of discretion.

### G. *Disparity of Sentences*

The challenged disparity came about in this fashion. DePalm entered a plea of guilty to possession with intent to distribute and received a one year sentence. Paris proceeded to trial and received a sentence of five years imprisonment, with a special parole term of five years, for possession with intent to distribute, and a consecutive five year prison term for conspiracy.[4] Paris thinks this is too much and claims that the evidence does not warrant the disparity in sentences.

Sentences that do not exceed the statutory maxima are generally committed to the district court's broad discretion. *United States v. Messer*, 785 F.2d 832, 834 (9th Cir.1986). When, however, there is a substantial disparity in sentences imposed on defendants engaged in the same criminal activity, and a defendant's constitutional right to stand trial is implicated, proper reasons for the disparity must be "readily discernible" from the record. *United States v. Hall*, 778 F.2d 1427, 1428 (9th Cir.1985). Here, DePalm pleaded guilty

---

**4.** Another defendant, Amorita Garcia, entered a plea of guilty to the charge of possession with intent to distribute. The conspiracy charge against her was dismissed. She received a five year suspended sentence and was placed on probation for five years.

and received a substantially less severe sentence than Paris, who stood trial. Paris, however, does not argue that he was penalized for exercising his right to stand trial. Instead, he claims that no basis in the record exists for imposing disparate sentences. *See United States v. Harlin,* 539 F.2d 679, 682 (9th Cir.) *cert. denied,* 429 U.S. 942, 97 S.Ct. 362, 50 L.Ed.2d 313 (1976).

There is no reason to believe that the district judge increased Paris's sentence to punish him for exercising his right to stand trial. To the contrary, there is sufficient evidence readily discernible in the record to justify imposing a more severe sentence on Paris. First, we may assume that the court took into account Paris's role as supplier. *See id.* Moreover, in imposing the sentence, the trial court expressly referred to Paris's privileged position as a government attorney and his apparent perjury at trial. These considerations were proper. *See United States v. Beecroft,* 608 F.2d 753, 761–62 (9th Cir.1979); *United States v. Brown,* 761 F.2d 1272, 1278 (9th Cir.1985). The sentence was well within the court's discretion.

AFFIRMED.

KOZINSKI, Circuit Judge, dissenting:

In this case we must balance the rights of one individual against those of another, and individual rights against the workings of our criminal justice system. The complex question presented does not avail itself of an easy answer; I cannot say that the majority's approach in resolving the conflict between these competing interests is manifestly wrong. Nevertheless, I believe the majority does not confront the key question on this appeal: Did the government's refusal to grant DePalm use immunity while using his out-of-court statements as the cornerstone of its case violate Paris' right to a fair trial? Because I conclude that it did, I must respectfully dissent.

I concede at the outset that the district court could not have forced the government to grant DePalm use immunity. Use immunity is a creature of statute and "Congress has delegated the authority to grant use immunity solely to the executive branch of government." *United States v. Taylor,* 728 F.2d 930, 934 (7th Cir.1984). The statute grants the prosecutor a great deal of discretion: It provides that a "United States Attorney *may* " request use immunity where "in his judgment" the testimony may be vital to the public interest. 18 U.S.C. § 6003 (1982) (emphasis added). No statute authorizes the court to grant a witness use immunity sua sponte or at the behest of a defendant.

Even so, the court does have the authority, indeed the responsibility, to ensure that the accused is given a fair trial. Where the prosecutor's refusal to grant immunity results in such unfairness to the accused that it amounts to a denial of due process, the court must exercise the considerable powers it does have to even the balance. In this case, the district court could have, and in my view should have, excluded DePalm's out-of-court statements unless the government granted DePalm use immunity so that Paris could cross-examine him.

This is not a novel proposition. We have long held that the "key question" in this situation is "whether appellant was denied a fair trial because of the government's refusal to seek immunity for defense witnesses." *United States v. Alessio,* 528 F.2d 1079, 1082 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976); *see also Taylor,* 728 F.2d at 935 ("[p]rosecutors must exercise [immunity] authority within the bounds of the due process clause of the fifth amendment"). Where the prosecutor's decision not to grant a witness use immunity has "distort[ed] the judicial fact-finding process," *id.,* the court must step in. The circumstances here indicate that the denial of use immunity, coupled with the introduction of DePalm's out-of-court statements, created just such an impermissible distortion.

*First,* once the prosecutor decided to rely on DePalm's out-of-court statements as reported by Officer Hafley, cross-examination of DePalm became crucial to Paris' defense. DePalm's statements constituted, in the majority's terms, the "chief evidence

of Paris's guilt." Op. at 398. More than that, however, the statements were indispensable to the government's case for conspiracy. *See United States v. Lewis*, 759 F.2d 1316, 1352 (8th Cir.) (delivery of cocaine does not prove knowledge of conspiracy), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *United States v. Hyson*, 721 F.2d 856, 862 (1st Cir.1983) (possession of controlled substance does not establish participation in conspiracy to distribute). Thus, Paris' best chance of gaining acquittal lay in impeaching Hafley's testimony. And the best way to do this would have been to have DePalm contradict Hafley in open court. Moreover, Paris maintained that he was set up by DePalm and a man named Michael, who allegedly planted the briefcase full of cocaine in the back seat of Paris' car. While the story seems somewhat implausible, it is not, in my view, patently absurd.[1] Because Michael never turned up, the only person who could possibly lend credibility to this story was DePalm.

There is a substantial possibility that DePalm's testimony would have materially affected the outcome of the case. One of the government's most telling pieces of evidence, for example, was DePalm's reported statement that his source was going back east on a certain date to attend his parents' fiftieth wedding anniversary. The government argued, with devastating effect I would imagine, that Paris must have been the source, because he had in fact traveled to Ohio on that date for his parents' fiftieth anniversary. However, in his presentence report, DePalm flatly denied having made that statement. A similar denial on the witness stand would have cast serious doubt on this key piece of evidence and, quite possibility, on Hafley's entire testimony.[2]

There were other weaknesses and contradictions in the DePalm evidence that could have been exploited through cross-examination. For example, DePalm reportedly said that the source would arrive in a red Subaru or a white Toyota; Paris asserts he does not own a red Subaru. Because DePalm did not take the stand, Paris was unable to explore whether DePalm actually made that statement and, if so, why. In addition, the court admitted DePalm's out-of-court statement that he had 25 years' experience in the drug business. Again, the presentence report indicates that DePalm denied saying this. In light of these discrepancies, I cannot find, as the majority does, that there was "no evidence" DePalm would have retracted his statements.

*Second*, the government's use of DePalm's out-of-court statements implicated Paris' Sixth Amendment right to confront a key witness against him. While neither the rules of evidence nor the Constitution bars the introduction of all out-of-court statements, it is well recognized that such statements have serious potential for denying the accused a full and fair opportunity to present a defense. We have previously noted that "the Sixth Amendment right to confrontation ... is effectively denied to a criminal defendant when out of court statements, made outside a defendant's presence, are introduced at trial and the maker of the statement is not present, does not take the stand, or invokes a privilege so as to deprive the defendant an opportunity to cross-examine." *United States v. Brady*, 579 F.2d 1121, 1129 (9th Cir.1978) (citing *Bruton v. United States*, 391 U.S. 123, 124–26, 88 S.Ct. 1620, 1621–23, 20 L.Ed.2d 476 (1968)), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979). As in *Bruton*, Paris' constitutional right to confrontation was impaired by the admission of evidence that "added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination." *Bruton*, 391 U.S. at 128, 88 S.Ct. at 1623.

Of course, where circumstances make it impossible to present the hearsay declarant for cross-examination, the balance may

---

1. It is worth noting that none of the prints found on the briefcase or the bag of cocaine inside belonged to Paris.

2. This information was not known at the time of trial. It therefore could not have been used to impeach Hafley's statements. It does show, however, that DePalm's testimony might well have contradicted Hafley's.

well tip in favor of letting the government present its case. But here there was no such impossibility.[3] DePalm was available to testify but refused to do so merely because he feared self-incrimination, a fear that immunity could have removed.[4]

*Finally,* the government has advanced no legitimate reason for refusing to grant DePalm use immunity as to any testimony he would give in Paris' case.[5] The government's brief on appeal completely ignores the issue, asserting only that "there is no right to defense witness immunity." Gov't Brief at 17. Questioned at oral argument, government counsel argued that DePalm was not given immunity because the prosecution doubted DePalm would tell the truth.[6] This is patent nonsense. In es-

---

3. In *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980), the Court noted that "the Sixth Amendment establishes a rule of necessity. In the usual case ... the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Recently, however, the Court limited this rule to hearsay consisting of prior testimony. *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 1125, 89 L.Ed.2d 390 (1986). The Supreme Court has specifically rejected the requirements that the government prove the unavailability and reliability of the declarant before co-conspirator statements are admitted. *Id.* 106 S.Ct. at 1129 (unavailability); *Bourjaily v. United States,* — U.S. —, —, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987) (reliability). Nevertheless, I do not read these decisions as holding that co- conspirator's statements are automatically admissible. Moreover, they certainly did not eliminate a court's responsibility under the Fifth Amendment to evaluate the overall fairness of a criminal proceeding. In this case, I cannot conclude that "the trier of fact could satisfactorily evaluate the truth of the hearsay statement" without DePalm's in-court testimony. *United States v. Eaglin,* 571 F.2d 1069, 1084 (9th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). The Sixth Amendment must inform our application of the Fifth.

4. Indeed, it appears that DePalm had little to fear from testifying. He based his Fifth Amendment claim on the possibility he could be implicated in a drug conspiracy. In the process of pleading guilty, however, DePalm had already admitted he conspired with others to purchase and sell cocaine. It is difficult to imagine, therefore, how DePalm could have been subjected to greater criminal liability by testifying. *See United States v. Pardo,* 636 F.2d 535, 542–44 (D.C.Cir.1980). The state was precluded from prosecuting him on similar charges under Cal. Penal Code § 656 (1970). *See People v. Belcher,* 11 Cal.3d 91, 520 P.2d 385, 113 Cal.Rptr. 1 (1974).

5. For his part, Paris did everything he could to obtain DePalm's testimony. He subpoenaed him, but after DePalm invoked his Fifth Amendment privilege the district court quashed the subpoena. Paris then requested that the government grant DePalm use immunity and made an offer of proof suggesting that DePalm's testimony would be material, possibly favorable to the defense and not cumulative. *See generally United States v. Carman,* 577 F.2d 556, 561 (9th Cir.1978). This request was refused.

The majority asserts that "Paris never asked the prosecutor to grant DePalm immunity." Op. at 401. In fact, Paris moved in limine to exclude DePalm's out-of-court statements because DePalm was available as a witness. Paris suggested that "the Government can grant [DePalm] use immunity for his testimony, since he has already pleaded guilty and the Government has nothing to lose by so doing." ER 5, at 4.

6. The majority characterizes the government's statements as "inconclusive." Op. at 401 n. 3. I respectfully disagree. The following is a transcript of the relevant portion of the oral argument:

THE COURT [JUDGE KOZINSKI]: Well, you asked for the introduction of the hearsay statements to which he [defendant] objected. You are the one who brought in the DePalm testimony; the DePalm statements were crucial to your case. Why isn't it appropriate at that point to bring him [DePalm] to court to allow him to testify under use immunity? Do you think that's fair?

MR. LUCKEL: *I don't think it's in the interest of justice to—allow a person who is going to testify in a manner that the executive branch of government is convinced beyond all possible doubt that his testimony would be a lie.*

THE COURT [JUDGE SNEED]: The truth of the matter is you want to hold him to his bargain.

MR. LUCKEL: We want to hold him to his bargain, too, but we're not going to assume that—we certainly—

THE COURT [JUDGE KOZINSKI]: He didn't bargain to testify a particular way.

MR. LUCKEL: No.

THE COURT: What you're saying is he said some things outside the court and what you would like to do is have that part of the story in the courtroom. Here's something you say to clarify or rebut or deny; you sure ... don't want it in that courtroom. Isn't that your point?

MR. LUCKEL: No, that's not it.

THE COURT: I mean, is that part of the bargain?

MR. LUCKEL: That's not part of the bargain, but *I don't think the Attorney General of*

sence, the prosecutor made a unilateral decision that Hafley's second-hand report of what DePalm allegedly said to him months before was more reliable than what DePalm would say in court under oath. This seriously misconceives the proper role of the prosecution in a criminal case. The trial is a search for the truth; it is up to the jury, not the government, to decide the facts, weighing the credibility of witnesses. By allowing only one side of the story to be presented, the government unfairly tipped the scales in its favor. The proper approach would have been to allow DePalm to testify; if the government believed he was lying, it could have cross-examined him or prosecuted him for perjury.

A criminal trial, like life itself, can make no claim to perfection. All too frequently we must compromise ideal to necessity. But compromise suggests weighing and weighing requires a consideration of competing interests. The evil I see here is that there were no competing interests. Paris' right to confront the key witness against him, to cross-examine him in open court, to attempt to impeach his story was sacrificed, as best the record discloses, at the whim of the prosecutor.

It is the district court's responsibility to guard against such overreaching. Here the district court had a simple method of avoiding unfairness to the accused: It could have excluded Hafley's account of what DePalm allegedly told him unless the prosecution was willing to produce DePalm and grant him use immunity. Federal Rule of Evidence 403 or the court's inherent powers to control the admission of evidence were ample authority for imposing this condition. Due regard for the rights of the

accused, in my view, required the district court to do so. Its failure to so condition introduction of the DePalm evidence unnecessarily and improperly prejudiced Paris' right to a fair trial, denying him due process and the right to confrontation. I would reverse.

\* \* \*

On rehearing, the majority adds a footnote, relying on evidence unknown—indeed nonexistent—at the time the opinion was originally issued. Op. at 401 n. 3. The new facts are derived from two affidavits presented in the government's response to the petition for rehearing. These are not preexisting affidavits, culled from the record and belatedly brought to the court's attention. Both affidavits are dated March 31, 1987, more than three weeks after the original opinion was issued. Reliance on such one-sided, post-hoc "testimony" is highly questionable under the best of circumstances.[7]

But these are not the best of circumstances. The government's affidavits are vague and mutually inconsistent; artfully drafted, they say less than they appear to. For example, the majority is under the impression that "the government *wanted* DePalm to testify at Paris's trial. DePalm refused." Op. at 401 n. 3 (emphasis in original). The prosecutor's declaration is far more slippery, claiming only that he "would have liked to have had DePalm available," and that he discussed with DePalm's attorney the "possibility" that DePalm might "reconsider his decision to assert the Fifth Amendment." Luckel Declaration at 1, 2. DePalm's lawyer confirms that it was Paris who "at all times, and

---

the United States, who is vested with the discretion to make decisions about immunity, is going to grant immunity to a person where everything indicates the person would be testifying falsely if he is granted immunity.

. . . .

THE COURT:—So what have you got to lose if he gets on the stand and he tells the truth? The truth has come out and the government wins because the government always wins when the truth comes out.

MR. LUCKEL: Well, I think *what you— have to lose is a—potential pollution of the truth-seeking process.* [Emphasis added.]

Although the prosecutor filed a post-opinion affidavit addressing other issues, he has never repudiated these statements.

7. The majority seeks to justify its reliance on the government's post-opinion declarations by noting that they were submitted to rebut a post-opinion affidavit filed by defendant. Op. at 401 n. 3. I fail to understand why the *government's* reasons for filing the declarations justify or explain the *majority's* reliance on them.

vigorously . . . requested DePalm to testify on his behalf." Serra Declaration at 2.

Moreover, the prosecutor now asserts that "I never asked or implied that DePalm assert the privilege nor was it a condition of the plea that he do so." Luckel Declaration at 1. That may be so, but DePalm's lawyer makes it quite clear that preserving DePalm's right to assert the privilege against self-incrimination "was a prerequisite to his plea." Serra Declaration at 2. In fact, DePalm's lawyer hints that De-Palm would not have pleaded guilty without the government's assurance that he would not be granted immunity. *Id.* at 2. Quite clearly, having DePalm stand mute was at the heart of his plea agreement. The fact of the matter is that, although the majority spends three paragraphs parsing the allegations and counter-allegations on this issue, we have only the vaguest idea of what really happened.

It seems to me the majority has a choice: It can stand by its earlier opinion, concluding that the new information presented by the government is irrelevant; or, if it concludes that this evidence is relevant, it must remand for a factual determination of whether the affidavits are worthy of belief—the function of trial, not appellate courts. By relying on these affidavits as presented, the majority compounds the injustice to Paris. Now, the prosecutor is not merely given the privilege of keeping witnesses out based upon his own guess as to whether they will tell the truth, he is allowed to create evidence in response to the appellate court's decision and have the court rely on it as fact.