**UNITED STATES of America**
v.
**Esric Ricardo LUGG, Appellant.**
No. 88–3174.
United States Court of Appeals,
District of Columbia Circuit.
Argued Oct. 11, 1989.
Decided Dec. 22, 1989.
Opinion on Denial of Rehearing and Rehearing En Banc March 2, 1990.

Lawrence M. Baskir, appointed by this Court, for appellant.

Geoffrey Bestor, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before BUCKLEY, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Esric Ricardo Lugg ("Lugg" or "appellant") appeals from his conviction of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. He asserts that the District Court erred in refusing to compel the testimony of co-defendant witnesses called by the defense after those co-defendants had entered pleas of guilty. As we find that the District Court committed no reversible error in its rulings on the questions before us, we affirm the convictions for the reasons more fully set out below.

I. BACKGROUND

The indictment in this case originally charged appellant and four co-defendants with conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. The indictment additionally charged some co-defendants, but not Lugg, with other related charges. Two defendants, Dennis Fuller and Michael Fyffe, were fugitives at the time of Lugg's trial. The other two, Corinthia Robinson and Sharon Goff, pleaded guilty pursuant to plea agreements which will be further discussed below. Appellant, therefore, stood trial alone. The government offered evidence to the effect that Fuller and Fyffe ran a crack distribution business from the apartments of Robinson and Goff; that appellant lived with Robinson, while Fuller and Fyffe (both New Yorkers) stayed with either Robinson or Goff while in the District of Columbia; and that the three male defendants kept a supply of crack cocaine in Goff's apartment and sold it from Robinson's apartment. Both Robinson and Goff transported and sold crack in return for money and drugs. The government's evidence further tended to show that Lugg received drugs from Fuller, sold drugs directly himself, and gave drugs to the female defendants for re-sale. In further support of its conspiracy theory, the government presented testimony from relatives of Robinson who testified that they had lived at her apartment during the period of the conspiracy and been given crack cocaine by appellant, Fuller, and Fyffe. Both relatives further testified that they sold the cocaine and returned the money to whichever of the three had given them the drugs, while retaining some of the money

and receiving other drugs as payment for participation in the sale. Other government evidence included testimony as to other details of the cocaine conspiracy and physical evidence obtained under search warrants executed at the two apartments on March 4, 1988.

After the conclusion of the government's case, the defense attempted to call co-defendants Goff and Robinson. Appellant's trial counsel proffered the testimony he expected to introduce through these two witnesses, a proffer based on information received by him from attorneys representing the witnesses. The proffer claimed that Goff would testify that there had been $68,000 at her apartment when the search was conducted rather than $39,500 as reported by the police, and that Fuller had left the apartment immediately before the police arrived to execute the warrant. He also claimed that Robinson would testify that she overheard a police radio transmission confirming the amount of the money at $68,000 and that she overheard a conversation between officers at her apartment indicating that the officers knew who Fuller was and apparently deliberately released him, in contradiction to the officers' testimony that they had not arrested Fuller because they did not know who he was and did not then have probable cause. Appellant contends that the testimony would have been valuable for impeachment of the officers.

The two prospective witnesses, each represented by separate counsel, took the stand at a *voir dire* hearing out of the presence of the jury. In response to questioning by appellant's trial counsel each asserted her Fifth Amendment privilege against self-incrimination in response to all questions. The trial court upheld the witnesses' invocation of the privilege and refused to order their testimony. Appellant objected, asserting then, as he argues now, that each witness had waived her Fifth Amendment rights in pleading guilty under a specific plea agreement before appellant's trial.

The defense then rested without offering evidence. The jury found defendant guilty. The District Court sentenced him to a term of fifteen years together with a special assessment of $50. Lugg filed the present appeal.

## II. ANALYSIS

■ Appellant asserts that the trial court erred in holding that each witness's Fifth Amendment privilege continued after the entry by her of a guilty plea pursuant to a plea agreement to drop all other charges, especially because each plea agreement contained a provision that the witness would offer truthful testimony "if needed." In support of that proposition, appellant offers *United States v. Pardo,* 636 F.2d 535 (D.C.Cir.1980). Appellant correctly argues that in *Pardo* we held that a district court had erred in honoring the Fifth Amendment claim of a witness who had previously entered a plea bargain substantially the same as those entered by the witnesses in this case. That is, the witness in *Pardo,* like Robinson and Goff, had agreed to plead guilty to one count, and the government agreed to drop all other charges against the witness. In *Pardo* we noted that

'[i]t is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify.'

*Id.* at 543 (quoting *United States v. Romero,* 249 F.2d 371, 375 (2d Cir.1957)). We further noted that "[t]he same result of course attaches if the witness pled guilty to the offense in question, rather than being convicted following a trial" and that "the privilege is also lost with respect to charges or counts of an indictment which are dismissed as part of a plea agreement." *Id.* Therefore, it followed in *Pardo* that because the witness had pled guilty and been sentenced, and because all other charges had been dismissed, the protection of the Fifth Amendment no longer extended to those charges. Thus, we held that the district court in *Pardo* erred in failing to compel the witness to testify.

Appellant overlooks two significant, indeed controlling, distinctions between *Pardo* and the present case. First, in the present case, although each witness had entered a plea agreement and pleaded guilty, neither had been sentenced. As has been held in several of our sister circuits, "[a] convicted but unsentenced defendant retains his Fifth Amendment rights." *United States v. Paris,* 827 F.2d 395, 399 (9th Cir.1987) (footnote omitted). *Accord, United States v. Tindle,* 808 F.2d 319, 325 (4th Cir.1986); *United States v. Khan,* 728 F.2d 676, 680 (5th Cir.1984); *United States v. Domenech,* 476 F.2d 1229, 1231 (2d Cir. 1973). As our sister circuits have noted,

the convicted but unsentenced defendant retains a legitimate protectable Fifth Amendment interest in not testifying as to incriminating matters that could yet have an impact on his sentence. *See Paris, Tindle,* and *Domenech, supra.*

Further distinguishing this case from *Pardo* is the factor that in *Pardo,* the other charges against the prospective witness had already been dismissed, apparently with prejudice. As we held there, "the [Fifth Amendment] privilege is also lost with respect to charges or counts of an indictment which are dismissed as a part of a plea agreement." *Pardo,* 636 F.2d at 543. Indeed, we emphasized that "when a plea rests to any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled." Id.* (quoting *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)) (emphasis supplied in *Pardo* ). In the present case there remained other charges against Robinson and Goff which had not yet been dismissed. If for any reason the plea bargain became ineffective, for example if Robinson or Goff gave false testimony or if the plea bargain for any other reason came apart, the other charges might never be dismissed. Thus, the court could not compel the testimony in the face of each witness's invocation of her Fifth Amendment privilege. Lugg asserts that this is unfair, and constitutes a one-sided immunity, as he asserts that the government could have called Robinson or Goff in its case in chief and compelled her testimony. The fact of the matter is that even if the government had called Robinson or Goff and she had asserted her Fifth Amendment privilege, the court could not have compelled the testimony. Appellant's assertion that the government could have compelled the witnesses to testify is without merit.

■ Appellant's erroneous argument that the government could have exercised compulsion is grounded in his confusion of the present case with those in which the government has granted a witness formal use immunity under 18 U.S.C. §§ 6001–6005 or some similar statutory provision. True, in the case of a valid statutory immunity, the witness can be compelled to testify over her assertion of the Fifth Amendment. *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). However, as we noted in *In re Corrugated Container Antitrust Litigation,* 662 F.2d 875 (D.C.Cir.1981), this compulsion is founded only on "formal statutory immunity" and "to require" a witness who has not received such statutory immunity "to offer incriminating testimony … would be to do so at his peril." *Id.* at 887. Even though statutorily immunized witnesses must testify as to incriminating matters on pain of contempt, this compulsion does not extend to witnesses, like those in the present case, who are not formally immunized but rather await disposition of charges, even in the face of a plea agreement. We have found no case, either from this Court or any other, that has compelled testimony in the face of a Fifth Amendment privilege, solely on the basis of a plea agreement so long as the sentencing had not yet been conducted nor the other charges dismissed. To the contrary, cases from several courts indicate that witnesses who have breached their plea agreement are subject to prosecution on the otherwise dismissible charges. *See, e.g., United States v. Skalsky,* 857 F.2d 172, 175–76 (3d Cir.1988); *United States v. Stirling,* 571 F.2d 708, 731–32 (2d Cir.1978); *United States v. Pellon,* 475 F.Supp. 467, 480–81 (S.D.N.Y.1979), *aff'd without op.,* 620 F.2d 286 (2d Cir.1980).

So far as appears in any of the authorities, if the government has entered into a plea agreement with a defendant conditioned upon that defendant's testimony and the government's dismissal of other charges, until that bargain has been completely effectuated and the charges in fact dismissed, the witness retains her Fifth Amendment protection against compelled testimony and, even if the government is the party calling her, the only remedy for her refusal to testify is revocation of the bargain and prosecution as originally contemplated, not compulsion of the witness in the face of her assertion of the privilege.

The authorities offered us by defendant are not to the contrary. True, many cases have held that plea agreements can be enforced against the government. *See, e.g., Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Presumably in the present case this would have prevented the government from indicting Robinson and Goff on dismissed charges following effectuation of their plea agreements. However, neither *Santobello* nor *Mabry* nor any other case offered by

appellant stands for the proposition that the government can compel the testimony of a witness under a still pending plea agreement as opposed to merely revoking the bargain if she fails to uphold her side of the agreement.

As appellant argues, it is, of course, likely that had the government called either Robinson or Goff she would have testified on behalf of the prosecution rather than lose her bargain. While this proposition may be troubling, it does not empower a district court or us to ignore the Fifth Amendment rights of the two witnesses when they were called by the defense and refused to testify. Appellant argues that the apparent unfairness could have been alleviated by the prosecution granting immunity to Robinson and Goff and that the court should have ordered such immunity. Whether or not defendant is otherwise correct is immaterial, since the court had no power to order such immunity. The cases are legion and uniform that only the Executive can grant statutory immunity, not a court. *See, e.g., United States v. Payton*, 878 F.2d 1089, 1092 (8th Cir.1989); *United States v. Herrera–Medina*, 853 F.2d 564, 568 (7th Cir.1988); *United States v. Taylor*, 728 F.2d 930, 934 (7th Cir.1984). We are not an exception to this universal rule and have previously approved the view that " 'it is not the proper business of the trial judge to inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness.' " *United States v. Heldt*, 668 F.2d 1238, 1283 (D.C. Cir.1981) (quoting *United States v. Turkish*, 623 F.2d 769 (2d Cir.1980) (Lumbard, J., concurring in part)).

Some cases have indicated that the government may be compelled to grant a defense witness immunity in "extraordinary circumstances." *See, e.g., United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988); *United States v. Praetorius*, 622 F.2d 1054, 1064 (2d Cir.1979), *cert. denied sub nom. Lebel v. United States*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980). Language to that effect seems to occur largely in instances of prosecutorial misconduct, which is not present in the instant case. At least the Seventh and Ninth Circuits have indicated that courts may intervene in the prosecutorial immunity decision "[w]here the prosecutor's decision not to grant a witness use immunity has 'distort[ed] the judicial fact-finding process,' " *Paris*, 827 F.2d at 403 (Kozinski, J., dissenting) (quoting *United States v. Taylor*, 728 F.2d 930, 935 (7th Cir.1984)). *See also United States v. Alessio*, 528 F.2d 1079, 1082 (9th Cir.1976). Whether or not we would join the Seventh and Ninth Circuits in this view were we presented with an appropriate case, the present facts do not present that question. If Robinson and Goff had testified exactly as Lugg's trial counsel hoped, they would have presented at most questionable impeachment of a prosecution witness as to a collateral matter. Whatever it takes to constitute a deprivation of a fair trial by the prosecution's failure to exercise its broad discretion on immunity grants, the present case does not present it.

In short, the District Judge did not err in not granting immunity that he could not grant nor in not ordering the prosecution to grant immunity when he could not so order.

### III. CONCLUSION

For the reasons set forth above, we conclude that the District Court committed no reversible error. Consequently, we affirm the judgment.

Opinion *Per Curiam.*

Statement concurring in the result filed by Circuit Judge SENTELLE.

PER CURIAM:

In affirming Lugg's conviction for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846, we upheld the district court's decision that two witnesses' fifth amendment privilege against self-incrimination "continued after the entry by [each of them] of a guilty plea pursuant to a plea agreement to drop all other charges." Panel op. at 102. This conclusion rested upon two independent grounds that distinguished it from our earlier decision in *United States v. Pardo*, 636 F.2d 535, 542–47 (1980): (1) "although each witness had entered a plea agreement and pleaded guilty, neither had been sentenced"; and (2) although the Government, as part of the plea agreement with the witnesses, had agreed to drop the charges against them, those charges "had not yet been dismissed." Panel op. at 103. Lugg's petition for rehearing now presents a strong reason for thinking that the second basis for our decision was incorrect.

Once the witnesses agreed to plead guilty to one count in exchange for the Government's promise to dismiss the other charges against them, the Government was bound by the agreement and could not then

decide to try them for the charges that it had agreed to dismiss. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *Pardo*, 636 F.2d at 543. Moreover, the Government was so bound regardless of whether the charges had been formally dismissed. *See United States v. Blackwell*, 694 F.2d 1325, 1336–40 (D.C.Cir.1982). Thus, assuming that no problem arose to release the Government from its agreement, the Government apparently could not have prosecuted the witnesses for the charges that it had agreed to dismiss even in the absence of a formal dismissal of those charges.

On the other hand, if something did arise that required the district court to release the witnesses from their plea agreement (for example, a valid claim of ineffective assistance of counsel at the time that they entered into the agreement), the Government could likely have reinstated the charges that it had agreed to dismiss, regardless of whether the district court had already entered the dismissal. *See, e.g., Fransaw v. Lynaugh*, 810 F.2d 518, 523–29 (5th Cir.1987). We have no occasion to comment on whether, if the witnesses had testified by that time, their testimony could be used against them once the charges were reinstated; we see no reason, however, why the answer to that question would turn on whether the dismissal had ever been entered.

Lugg may therefore be correct that the district court's not having entered the dismissal of the charges against the witnesses at the time of his trial has no bearing upon whether they retained their fifth amendment privilege. It is not necessary for us to resolve the matter at this time, however. As noted above, our decision also rested upon the independent ground that the witnesses had not yet been sentenced at the time of Lugg's trial. They certainly had a fifth amendment privilege on that account, and thus there was no error in excusing them from testifying at Lugg's trial.

*Petition denied.*

SENTELLE, Circuit Judge, concurring in result:

I concur with my colleagues that Lugg has presented us nothing warranting rehearing. I further concur with them that it is not necessary for us to resolve the question of whether or not the entry of dismissal affects a witness's retention of Fifth Amendment privileges. Since it is not necessary I see no reason to engage in my colleagues' analysis on the subject and would leave that question for a day when it is necessary. I do not understand it to be the office of an Article III Court to decide unnecessary questions.