UNITED STATES of America

v.

Amanda MITCHELL, aka
Amanda Foster,

Amanda Mitchell, Appellant.

No. 96–1605.

United States Court of Appeals,
Third Circuit.

Argued July 17, 1997.

Decided Sept. 9, 1997.

Steven A. Morley (Argued), Philadelphia, PA, for Appellant.

Barbara L. Miller (Argued), Office of United States Attorney, Philadelphia, PA, for Appellee.

Before: SLOVITER, Chief Judge, ROTH and MICHEL,* Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

This appeal by Amanda Mitchell, who pled guilty to engaging in a conspiracy to distribute cocaine, raises an issue of first impression for this court, namely, whether a criminal defendant who pleads guilty to distributing cocaine but reserves the right to contest the amount of cocaine for which she should be held responsible has a Fifth Amendment right not to testify during sentencing.

## I.

Mitchell and twenty-two other defendants were indicted for their roles in a cocaine conspiracy conducted between 1989 and March 1994, in Allentown, Pennsylvania. According to the indictment, defendant Harry Riddick led the conspiracy, purchasing large quantities of cocaine from various suppliers and selling the cocaine on a daily basis through couriers and street sellers to whom he provided cars and pagers for this purpose. Phill's Bar and Grill was the headquarters for the distribution ring.

Mitchell was charged in Count 1 with conspiring to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846 and in Counts 11, 21 and 28 for distribution of cocaine within 1,000 feet of a school or playground on three specific occasions in violation of 21 U.S.C. § 860(a). Under 21 U.S.C. § 841, the mandatory minimum sentence for a defendant convicted of distributing at least five kilograms but less than fifteen kilograms of cocaine is ten years imprisonment. The Sentencing Guidelines may then be used to increase the sentence above the statutory minimum as high as life imprisonment if it is determined that defendant sold a greater quantity of drugs or had a greater role in the conspiracy. In this case, Mitchell's mandatory minimum sentence fell within her Guidelines range, which was 97 to 121 months imprisonment.

On October 16, 1995, Mitchell entered an open plea of guilty, i.e., her plea was not premised on a plea agreement, to all four counts but reserved the right to contest the quantity of cocaine which she distributed. During the plea colloquy the district judge sought to ensure that Mitchell understood her rights. The judge began by stating that Mitchell had been charged with distributing more than five kilograms of cocaine, but after Mitchell's attorney reminded the judge that she did not accede to the amount of drugs at issue, the judge agreed that the quantity would be determined at sentencing.

The district judge then told Mitchell of the possible range of punishment she was exposing herself to by pleading guilty. The judge noted that "the range of punishment here is very complex because we don't know how much cocaine the Government's going to be able to show you were involved in," app. at 1305, and then deferred to the Assistant United States Attorney for her explanation of the possible punishment. The government lawyer stated:

> Ms. Miller [AUSA]: On Count 2, Miss Mitchell faces a mandatory minimum of ten years up to a maximum of life imprisonment, a maximum fine of $4 million, a mandatory minimum of five years up to a lifetime supervised release, and a $50 special assessment.
>
> On each of Counts 11, 21 and 28, Miss Mitchell faces a mandatory minimum of one year imprisonment up to a maximum of 40 years imprisonment, a maximum fine

---

* Hon. Paul R. Michel, United States Court of Appeals for the Federal Circuit, sitting by designa-

tion.

of $2 million, a mandatory minimum of six years supervised release up to lifetime supervised release, and a $50 special assessment.

On all counts, Miss Mitchell would face a total of a mandatory minimum of ten years up to a maximum of lifetime imprisonment, a $10 million fine, a mandatory minimum of six years up to lifetime supervised release, and a $200 special assessment. That would be on all counts.

The Court: Okay. Now, the penalties you just set forth, Ms. Miller, assume there's a five-kilogram involvement?

Ms. Miller: That's correct, sir.

The Court: So those are the penalties if the Government can prove that you [Mitchell] were involved in five kilograms of cocaine distribution. Your lawyer says you're not, is that right?

Mr. Morley [Mitchell's Attorney]: That's correct, sir.

The Court: So if you're not, then the penalties would be less.

App. at 1306–07.

Before accepting her plea, the district court stated that: "I find that there is a factual basis for the plea. I find that you understand your pretrial rights, your trial rights. I find that you understand as well as it can be understood the range of punishment to which you're exposing yourself including imprisonment." App. at 1322. The court also explained that Mitchell would be waiving her rights by pleading guilty, including specifically her Fifth Amendment right not to testify. App. at 1314. Mitchell then pled guilty.

Thereafter, in January 1996, the case against nine of Mitchell's co-defendants went to trial. Much of the trial testimony focused on Riddick's management of the cocaine operation. However, several of Mitchell's co-defendants who had pled guilty and agreed to cooperate with the government testified that Mitchell was one of Riddick's regular sellers. Shannon Riley testified that she often saw Mitchell at Phill's Bar going into the bathrooms in order to sell cocaine.

Paul Belfield testified that he regularly sold cocaine for Riddick and that during 1991 and 1992 Mitchell delivered the cocaine to him. When asked how he would get in touch with Mitchell, Belfield stated that "I would beep Harry Riddick, then Amanda [Mitchell] would come by and deliver me the cocaine." App. at 830. He testified that Mitchell used pagers and two-way radios that Riddick had given her for use in her cocaine deliveries.

Richard Thompson's testimony went directly to the issue of the quantity of cocaine involved. He testified that he worked two to three times per week selling at least two ounces of cocaine each day, that in April 1992, Riddick asked him to take Mitchell around and introduce her to Thompson's customers, and that she received a one and a half ounce bag of cocaine to sell two to three times per week. He stated that he saw Mitchell selling cocaine at this rate through December 1993. It is primarily Thompson's testimony that Mitchell seeks to undermine on appeal.

Mitchell's sentencing hearing took place on July 2, 1996. During the hearing Paul Belfield and Shannon Riley adopted their trial testimony and were cross-examined by Mitchell's counsel. The government also called Richard Thompson who adopted his trial testimony but also answered additional questions posed by the government about the specific amounts of cocaine that Mitchell had sold. Thompson testified that between April 1992 and August 1992 Mitchell worked two to three times a week selling one and a half to two ounces of cocaine each day, that between August 1992 and December 1993 she worked three to five times a week, and that from January 1994 through March 1994 Mitchell was in charge of distribution. On cross-examination, Mitchell's attorney elicited Thompson's concession that he did not see Mitchell consistently throughout this period.

The testimony of another trial witness, Alvitta Mack, was also adopted by both parties during the sentencing hearing. Mack had made a series of drug buys under the supervision of the DEA, and tape recorded some of the conversations. On several occasions Mack ordered a half ounce of cocaine from Riddick who sent his couriers, including Mitchell, to deliver the cocaine to Mack's house and collect the money. Mack testified

as to three sales, consisting of a total of two ounces of cocaine. Mitchell argued that these three documented sales were the only reliable testimony as to the quantity for which she should be held responsible. However, Mitchell provided no evidence and did not testify to rebut the government's evidence about drug quantity.

At the close of testimony at the sentencing hearing, the district judge stated that he believed Mitchell no longer retained a right not to testify because she had pled guilty to the underlying offense and thereby waived her Fifth Amendment privilege. He explained that he also found credible the testimony that she was a courier during the period of time in question and that, even at the very least, her sales of two ounces two days a week for a year and a half put her over the five kilogram level. Thus, she was subject to the statutory minimum penalty of ten years.

The Court then entered into the following dialogue with the attorneys:

Mr. Morley: And as far as her obligation to testify after she pleads guilty, I think that—I think she retains her Fifth Amendment privilege through sentencing. But—

The Court: Well, if I'm wrong—and let the record—you may want to take that up because I believe that under—once she pleads guilty, it's my understanding—or am I wrong in that, Attorney Miller?

Ms. Miller: I'm sorry, sir?

The Court: I believe that once a criminal defendant in a felony charge pleads guilty, then that defendant does not—no longer has a Fifth Amendment right to remain silent.

Ms. Miller: Yes, sir, with—with respect to the—

The Court: It's the sort of things we mention—we say that you're giving up your—

Mr. Morley: Right.

The Court:—right to be silent. . . .

\* \* \* \* \* \*

And let's get that tested. I think that if I—I think that in—in rejecting your argu-ment that I should reject the Belfield/Riley/Thompson testimony, one of the things that I am basing on that is her not testifying to the contrary. So there you have it. If I'm wrong, surely we'll have her resentenced.

App. at 1290–91.

Later the district judge told Mitchell that:

I held it against you that you didn't come forward today and tell me that you really only did this a couple of times. And if I made a mistake legally in that because in the United States, we have this principle that no defendant may be compelled to be a witness against herself.

. . . I'm taking the position that you should come forward and explain your side of this issue.

Your counsel's taking the position that you have a Fifth Amendment right not to. If he's right in that regard, I would be willing to bring you back for resentencing. And if you—if—and then I might take a closer look at the Belfield/Riley/Thompson testimony.

App. at 1295.

The district court then concluded that Mitchell sold 3.3 kilograms in 1994, 5.6 kilograms in 1993, and 3.9 kilograms in 1992 for a total of almost 13.0 kilograms. The court then sentenced her to the statutory minimum sentence of 120 months imprisonment, six years of supervised release, and a special assessment of $200.

## II.

Mitchell raises two issues on appeal. First, she argues that the district court erred by refusing to recognize her Fifth Amendment right not to testify during sentencing. Second, she contends that the district court erred in finding that the government proved by the preponderance of the evidence that Mitchell had sold thirteen kilograms of cocaine.

### A.

### *Fifth Amendment Claim*

The Fifth Amendment to the United States Constitution states that "no person

... shall be compelled in any criminal case to be a witness against himself." This privilege protects a person's right to refuse to testify at trial, *see United States v. Frierson,* 945 F.2d 650, 656 (3d Cir.1991), *cert. denied,* 503 U.S. 952, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992), and to refuse to provide evidence that would lead to prosecution or be used against him or her in a criminal prosecution, *see Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 817, 95 L.Ed. 1118 (1951). The privilege also precludes the government or the court from penalizing a defendant in any way for the use of the privilege, *see Minnesota v. Murphy,* 465 U.S. 420, 434, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984), and this encompasses a prohibition against comment on the exercise of the privilege at trial, *see Wilson v. United States,* 149 U.S. 60, 62, 13 S.Ct. 765, 766, 37 L.Ed. 650 (1893).

On the other hand, if a defendant's testimony cannot incriminate her, she cannot claim a Fifth Amendment privilege. *See Ullmann v. United States,* 350 U.S. 422, 431, 76 S.Ct. 497, 502, 100 L.Ed. 511 (1956) ("if the criminality has already been taken away, the amendment ceases to apply" (internal quotations omitted)). Once a defendant has been convicted of an offense, the privilege is lost because "he can no longer be incriminated by his testimony about said crime." *Reina v. United States,* 364 U.S. 507, 513, 81 S.Ct. 260, 263, 5 L.Ed.2d 249 (1960).

Similarly, as we held in *Frierson,* a defendant who has pled guilty to the offense "waives his privilege as to the acts constituting it." 945 F.2d at 656; *see also United States v. Rodriguez,* 706 F.2d 31, 36 (2d Cir.1983); *United States v. Moore,* 682 F.2d 853, 856 (9th Cir.1982). Of course, such a waiver will be effective only when the trial court has fully advised the defendant of the rights which the defendant relinquishes by such a plea.

Mitchell does not claim that she was not fully advised of the consequences of her guilty plea, including her forfeiture of the right to a jury trial and the right to remain silent under the Fifth Amendment. *See* app. at 1313–15. Nor does she contend that her plea was not knowing and intelligent. By voluntarily and knowingly pleading guilty to the offense Mitchell waived her Fifth Amendment privilege and stood before the court in the same position as if she had been convicted by a jury, a point the district judge emphasized. *See* app. at 1313.

In support of the proposition that she retained the right to invoke the Fifth Amendment in connection with her sentencing even though she had pled guilty, Mitchell cites three Third Circuit cases: *United States v. Garcia,* 544 F.2d 681 (3d Cir.1976); *United States v. Heubel,* 864 F.2d 1104 (3d Cir.1989); and *United States v. Frierson,* 945 F.2d 650 (3d Cir.1991). In *Garcia,* we held that the district court could not condition lenity on a sentence following a guilty plea on the defendants' revealing the source of their supply of cocaine and helping the authorities clean up or stamp out the drug problem. We noted that defendants were offered no assurance of immunity, commenting "if either appellant had acceded to the sentencing court's request to reveal his source of supply of cocaine, there was no guarantee that he would not be subsequently indicted for other acts not encompassed in the plea agreement." *Garcia,* 544 F.2d at 685.

Similarly, in *Heubel,* where we followed *Garcia* and held that a sentencing judge may not use a defendant's "failure to waive [the privilege against self-incrimination] as negative evidence to penalize him or her in deciding upon the appropriate sentence," *Heubel,* 864 F.2d at 1111, the basis for invocation of the privilege by the defendant who was charged with possession of cocaine with intent to distribute was "self-incrimination as to a potential conspiracy charge," *see id.* at 1106.

In *Frierson,* where we engaged in our most complete analysis of the issue of the assertion of the Fifth Amendment privilege in the context of sentencing, we held that "a denied reduction in sentence is a penalty in the context of Fifth Amendment jurisprudence," 945 F.2d at 660, but that Frierson had failed to claim the privilege "when asked during the sentencing process about acts beyond the acts of the offense of conviction," *id.* at 661. Therefore, the district court could properly deny him the two-level reduction for

acceptance of responsibility because he had denied possessing a gun in his voluntary statements to the probation officer. Significantly, in *Frierson*, we pointed out that the questioning as to the gun "could produce information that would enhance [Frierson's] exposure to criminal liability in a state prosecution for unlawful possession of a dangerous weapon or the like." *Id.* at 657 (*citing Murphy v. Waterfront Comm'n.*, 378 U.S. 52, 78, 84 S.Ct. 1594, 1608, 12 L.Ed.2d 678 (1964)).

Thus, rather than support the proposition that a defendant who has pled guilty retains some Fifth Amendment right at sentencing as to the crime of conviction, all three cases on which Mitchell relies are merely examples of the general principle that just as a defendant retains her Fifth Amendment right as to offenses for which she has not yet been convicted, a defendant's plea of guilty to one offense does not "by its own force . . . waive a privilege with respect to other alleged transgressions." *United States v. Yurasovich*, 580 F.2d 1212, 1218 (3d Cir.1978); *see United States v. Domenech*, 476 F.2d 1229, 1231 (2d Cir.), *cert. denied*, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973).

We have not previously addressed the question whether a defendant retains a Fifth Amendment right after a guilty plea or conviction with respect to testimony that might negatively affect her sentence. The issue has most frequently arisen when one of several defendants seeks to elicit testimony from one or more of his co-defendants who have pled guilty but have not yet been sentenced. The courts have generally permitted the unwilling witness to assert the Fifth Amendment privilege not to testify. A careful reading of the cases shows that in most instances the courts have explained that the witness would have been at risk of prosecution on other offenses. *See United States v. De La Cruz*, 996 F.2d 1307, 1311 (1st Cir.) (noting that government, in cross-examining witness, could produce testimony that would inculpate him "not merely in the instant transaction but in other [drug] transactions"), *cert. denied*, 510 U.S. 936, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993); *United States v. Mathews*, 997 F.2d 848, 851 n. 4 (11th Cir.) (stating that "convicted, but not yet sentenced,

defendant risks . . . additional prosecutions for related conduct"), *cert. denied*, 510 U.S. 1029, 114 S.Ct. 647, 126 L.Ed.2d 605 (1993); *United States v. Bahadar*, 954 F.2d 821, 824 (2d Cir.) (noting that witness remained subject to prosecution on open counts and therefore any testimony which he gave at defendant's trial could have been used as the basis for an upward departure at sentencing or "as evidence to support a prosecution on the two open counts"), *cert. denied*, 506 U.S. 850, 113 S.Ct. 149, 121 L.Ed.2d 101 (1992); *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1075 (6th Cir.1990) (stating that witnesses' "Fifth Amendment rights did survive their *nolo* plea as to the bank fraud charges because they remained vulnerable to further federal and state prosecution"); *United States v. Lugg*, 892 F.2d 101, 103 (D.C.Cir. 1989) (observing that other charges against witness remained which had not yet been dismissed); *Domenech*, 476 F.2d at 1229 (observing that Count 2 "still remained open against [witness] and his testimony . . ., could very well have further incriminated himself on that offense").

Because of the context in which these cases generally arose, i.e., the witness from whom the defendant sought to compel testimony had not been sentenced while the trial proceeded as to the non-pleading defendants, language in the cases commenting on the procedural status seems to have developed into the rule that "Fifth Amendment self incrimination rights continue in force until sentencing." *Abbe*, 916 F.2d at 1067; *see, e.g., De La Cruz*, 996 F.2d at 1313; *Mathews*, 997 F.2d at 851 n. 4; *Lugg*, 892 F.2d at 102–03. As noted, in many of the cases such statements were dicta, as the witness could have been subject to prosecution for other crimes as a result of the compelled testimony and the holdings therefore did not actually extend the Fifth Amendment to sentencing proceedings.

In some cases, however, the courts have segued into the related proposition that the witness could claim the Fifth Amendment privilege if his or her testimony might be used to enhance his or her sentence. *See United States v. Garcia*, 78 F.3d 1457, 1463 & n. 8 (10th Cir.), *cert. denied*, —— U.S. ——,

116 S.Ct. 1888, 135 L.Ed.2d 182 (1996). Although by repetition this statement appears to have evolved into an accepted rule, we believe it does not withstand analysis, and our opinion in *Frierson* suggests the same. In a footnote in that opinion, we stated, "the Fifth Amendment privilege is not implicated when a defendant is asked to talk about the crime to which he has pled guilty and about his or her attitude concerning that crime. *Nor is the privilege implicated if the sentence imposed is more harsh* because of the defendant's response to that interrogation." 945 F.2d at 656 n. 2 (emphasis added).

■ We see nothing in the Fifth Amendment ("No person ... shall be compelled in any criminal case to be a witness against himself ....") or in the Supreme Court's cases construing it that provides any basis for holding that the self-incrimination that is precluded extends to testimony that would have an impact on the appropriate sentence for the crime of conviction. The sentence is the penalty for the very crime of conviction, and if one could refuse to testify regarding the sentence then that would contravene the established principle that upon conviction, "criminality ceases; and with criminality the privilege." 8 Wigmore, Evidence § 2279 (McNaughton rev.1961). Similarly, although there may be many components to be considered in computing the sentence in the new era of Sentencing Guidelines and statutory sentencing directives, one cannot logically fragment the sentencing process for this purpose and retain the privilege against self-incrimination as to one or more of the components. Whether the defendant used a gun or had responsibility for more than five kilograms of cocaine is not an issue of independent criminality to which the Fifth Amendment applies in sentencing. Thus, we agree with the suggestion in *Frierson* that the privilege against self-incrimination is not implicated by testimony affecting the level of sentence. *See Frierson,* 945 F.2d at 656 n. 2.

Mitchell would have us find that *Frierson* is inapplicable to a situation where a defendant pled guilty but reserved the issue of the amount of drugs for sentencing. She argues that she never admitted to a drug quantity in her plea and specifically reserved the right to contest at sentencing the amount of cocaine attributable to her. We find that argument unpersuasive. Mitchell opened herself up to the full range of possible sentences for distributing cocaine when she was told during her plea colloquy that the penalty for conspiring to distribute cocaine had a maximum of life imprisonment. While her reservation may have put the government to its proof as to the amount of drugs, her declination to testify on that issue could properly be held against her.

Unlike the witnesses who were still open to prosecution in the series of cases referred to above where the courts sustained the invocation of the Fifth Amendment, Mitchell does not claim that she could be implicated in other crimes by testifying at her sentencing hearing, nor could she be retried by the state for the same offense, *see* 18 Pa. C.S.A. § 111. As the government notes, Mitchell "was not asked to testify about offenses outside the scope of her guilty plea," appellee's brief at 33, and we thus agree that once she pled guilty to the substantive offense she lost her Fifth Amendment privilege as to that offense.

We thus conclude that although Mitchell faced the possibility of a harsher sentence for this drug offense because of her failure to testify at the sentencing hearing to counter the credibility of Thompson and the other witnesses, in light of the fact that she does not claim that she exposed herself to future federal or state prosecution, the Fifth Amendment privilege no longer was available to her.

### B.

#### *Sufficiency of the Evidence*

■ Mitchell also argues that, whatever our decision on the Fifth Amendment claim, the government did not prove by a preponderance of the evidence that she had sold at least thirteen kilograms of cocaine. We review the district court's findings of fact regarding drug quantity to determine whether they are clearly erroneous. *United States v. Miele,* 989 F.2d 659, 663 (3d Cir.1993).

 Although the sentencing court must carefully scrutinize the government's evidence, "in calculating the amount of drugs involved in a particular operation, a degree of estimation is sometimes necessary." *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir.), *cert. denied*, 510 U.S. 968, 114 S.Ct. 449, 126 L.Ed.2d 382 (1993). In this case, the district court found credible the four witnesses who testified that Mitchell sold cocaine on a regular basis. Thompson testified that Mitchell sold between one and a half to two ounces of cocaine two to five times a week between April 1992 and March 1994. Riley and Thompson buttressed this testimony by testifying as to Mitchell's role in the conspiracy. Furthermore, the court could infer, from Mitchell's refusal to offer any evidence to the contrary, that these amounts were reliable. We cannot find that the district court's findings were clearly erroneous.

### III.

For the reasons set forth, we will affirm the judgment of conviction and sentence.

MICHEL, Circuit Judge, concurring.

While I agree with the result, I am not persuaded to join the categorical rationale that a guilty plea entirely waives a defendant's Fifth Amendment privilege—even as to facts that are not elements of the offense charged and as to which a defendant expressly "reserved" in offering a plea. Further, if the court's opinion is ready to indicate merely that the reservation here was ineffective, it is unclear to me why.

Mitchell and her attorney explicitly identified the quantity of drugs stated in the indictment, emphasizing that they "reserved" as to that allegation. It is true that neither Mitchell nor her attorney said anything about Mitchell believing she thereby retained a right to silence at sentencing. Was that omission fatal? And what if they had? Would the trial judge then have been obligated either to reject the plea or to refrain from relying on Mitchell's silence at all?

I accept that ordinarily a guilty plea waives the privilege as to all facts concerning the transactions alleged in an indictment. My only question is whether the same rule applies in the face of such an express reservation as to a non-element, especially where, as here, the defendant's silence was relied on in part to double the mandatory minimum sentence to ten years.

Finally, I believe the appeal could be disposed of under the Harmless Error rule. The trial judge found the government witnesses' testimony credible and sufficient to prove five kilograms, without considering Mitchell's silence. While he later relied as well on her silence in determining her sentence, the evidence amply supported his finding on quantity apart from that reliance. Given the unsettled state of the law among the Circuits on this important Fifth Amendment issue, I would defer a decision on it to a case in which deciding it is unavoidable and the briefs are more informative. Moreover, although the majority accurately analyzes and artfully distinguishes seemingly contrary decisions by other Circuits, I hesitate to create an apparent split among Circuits.