UNITED STATES of America, Appellee,

v.

Derrin A. PERKINS, Appellant.

UNITED STATES of America, Appellee,

v.

Andre P. WILLIAMS, Appellant.

UNITED STATES of America, Appellee,

v.

McKinley L. BOARD, Appellant.

UNITED STATES of America, Appellee,

v.

Donnell O. WILLIAMS, Appellant.

---

UNITED STATES of America, Appellee,

v.

Gregory M. THOMAS, Appellant.

Nos. 96–3115 to 96–3118, 96–3149.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 18, 1998.

Decided March 20, 1998

Andrew Grosso, Washington, DC, appointed by the court, argued the cause for the appellants. James Maloney, Paul Kay, Mary E. Davis and Marian Flynn, Washington, DC, appointed by the court, were on the joint brief.

Michael A. Fitzpatrick, Assistant United States Attorney, Washington, DC, argued the cause for the appellee. Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas C. Black and Carmen R. Kelley, Assistant United States Attorneys, Washington, DC, were on brief.

Before: EDWARDS, Chief Judge; WILLIAMS and HENDERSON, Circuit Judges.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants, McKinley Board, Gregory Thomas, Donnell Williams, Andre Williams

and Derrin Perkins, were all convicted of drug conspiracy charges. They challenge the district court's denial of their motion for new trial based on a letter allegedly written after trial by government witness Stepfoun Hartwell that purported to recant Hartwell's trial testimony and to describe witness tampering by prosecutors. At the new trial hearings Hartwell refused to testify invoking his right against self-incrimination under the Fifth Amendment to the United States Constitution. The appellants contend that the district judge erred in failing to secure Hartwell's testimony either by granting him use immunity from prosecution or by finding he had waived his Fifth Amendment privilege. We hold that the district judge lacked authority to grant immunity without a request from the United States Attorney and that neither the letter nor Hartwell's trial testimony constituted waiver of his Fifth Amendment privilege.

## I.

The appellants were defendants in the second of four trials of members of the "R Street Crew," so called because they sold narcotics near the intersection of R Street and Lincoln Road in Northeast Washington, D.C. Among the government's trial witnesses were Hartwell, Frankie Pelham, Kenneth Sparrow and William O. Mayo, each of whom testified about his dealings with members of the R Street Crew. On February 11, 1993 the jury convicted all but one of the defendants of conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. §§ 841 and 846, and of conspiracy to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. § 1962(d).[1] The district judge sentenced each convicted defendant to life imprisonment.

On January 28, 1995 Lawrence E. Freedman, a Fairfax, Virginia lawyer, sent the district judge a handwritten letter purportedly signed by Hartwell. The letter recited that prosecutors had rehearsed the author's

testimony with him before trial and that the "majority" of his testimony had been false and had been induced by prosecutors through bribery and threats. The letter also claimed that prosecutors allowed Hartwell, who was incarcerated at the time, to engage in sexual activity and to use alcohol and marihuana in return for his testimony. In a cover letter Freedman stated that Hartwell had sworn to him that the letter's contents were true.

On February 10, 1995 the appellants filed a motion pursuant to Federal Rule of Criminal Procedure 33 for a new trial based on newly discovered evidence, namely Hartwell's letter. They later supplemented the motion with written statements from Pelham, Sparrow and Mayo recanting their trial testimony and alleging similar prosecutorial misconduct. On September 12, 1995 the district judge conducted a hearing to determine whether Hartwell was willing or could be compelled to testify in the new trial proceedings. At the hearing Hartwell invoked his Fifth Amendment privilege against self-incrimination. In an order and memorandum opinion dated September 14, 1995 the judge held that Hartwell had claimed a valid privilege and that he had not waived it.

The government subsequently filed proffers of testimony from Pelham, Sparrow and Mayo asserting that their trial testimony had been truthful and that they had neither been coerced nor received special favors or bribes from prosecutors. In addition, Sparrow's proffer asserted that Hartwell had signed his recantation "under duress" from appellant Board. At hearings conducted on November 3, 1995 and January 4, 1996 Sparrow, Mayo and Pelham each testified that his trial testimony had been truthful and had not been influenced by prosecutorial misconduct. The district judge issued a memorandum opinion on September 6, 1996, denying the motion for new trial and again concluding that Hartwell's Fifth Amendment privilege protected him from testifying.

## II.

The appellants challenge the denial of their motion for new trial on the grounds that (1)

---

1. Defendant Steve Williams was acquitted of all charges against him. Of the other defendants all but Andre Williams were convicted of other related offenses as well.

the district judge should have granted Hartwell use immunity and (2) Hartwell waived his Fifth Amendment privilege.

### *Immunity*

The appellants first assert the district judge erred in not granting Hartwell use immunity from prosecution for his testimony at the new trial hearings, thereby averting the possibility of self-incrimination and the need to invoke the Fifth Amendment. We disagree.

■ It is true that a district judge is authorized by statute to immunize a witness claiming a Fifth Amendment privilege—but only "upon the request of the United States attorney." 18 U.S.C. § 6003. The government made no such request of the district judge and the judge therefore lacked authority to invoke the statute. *See United States v. Doe*, 465 U.S. 605, 616, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984) ("We decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request that the statute requires."); *see also United States v. Lugg*, 892 F.2d 101, 104 (D.C.Cir.1989) ("The cases are legion and uniform that only the Executive can grant statutory immunity, not a court. We are not an exception to this universal rule and have previously approved the view that 'it is not the proper business of the trial judge to inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness.' ") (citations omitted). The appellants nevertheless urge that we recognize an "inherent" judicial authority to grant use immunity without regard to the statute or to the government's position. In the past we have repeatedly rejected claims of judicial authority to grant such immunity. In *Ellis v. United States*, 416 F.2d 791 (D.C.Cir.1969), we observed that, in enacting the immunity statute, the Congress had "acted with care and particularity, limiting the power to grant immunity—in the presence of a valid claim of privilege—to a limited group of federal officials" and therefore concluded that "[w]ith that statute on the books, the power to grant immunity is plainly outside the judicial province." 416 F.2d at 796–97. In *United States v. Heldt*, 668 F.2d 1238 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982), we upheld the district court's refusal to grant immunity, approving the view that " 'it is not the proper business of the trial judge to inquire into the propriety of the prosecution's refusal to grant use immunity to a prospective witness.' " 668 F.2d at 1283 (quoting *United States v. Turkish*, 623 F.2d 769, 779 (2d Cir.1980) (Lombard, J., concurring in part and dissenting in part), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981)). Finally, in *United States v. Lugg*, we concluded that "the District Judge did not err in not granting immunity that he could not grant nor in not ordering the prosecution to grant immunity when he could not so order," stressing that "the court had no power to order such immunity." 892 F.2d at 104. Under circuit precedent, therefore, the district judge lacked authority to grant Hartwell use immunity.[2] Accordingly his failure to do so was not error.

### *Waiver*

■ Next, the appellants assert that Hartwell waived his Fifth Amendment privilege by testifying at trial and by writing the let-

2. In *Lugg* the court noted that "[s]ome cases have indicated that the government may be compelled to grant a defense witness immunity in 'extraordinary circumstances.' " 892 F.2d at 104 (citing *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir.) *cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 *and* 488 U.S. 932, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988); *United States v. Praetorius*, 622 F.2d 1054, 1064 (2d Cir.1979), *cert. denied*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980)). "At least the Seventh and Ninth Circuits," the *Lugg* court observed, "have indicated that courts may intervene in the prosecutorial immunity decision '[w]here the prosecutor's decision not to grant a witness use immunity has distort[ed] the judicial fact-finding process.' " *Id.* (quoting *United States v. Paris*, 827 F.2d 395, 403 (9th Cir.1987) (Kozinski, J., dissenting; citing *United States v. Taylor*, 728 F.2d 930, 935 (7th Cir.1984); *United States v. Alessio*, 528 F.2d 1079, 1082 (9th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976))). Without deciding "[w]hether or not we would join the Seventh and Ninth Circuits in this view were we presented with an appropriate case," the *Lugg* court concluded that "[w]hatever it takes to constitute a deprivation of a fair trial by the prosecution's failure to exercise its broad discretion on immunity grants, the present case does not present it." *Id.* We reach the same conclusion here. The appellants argue that the prosecution's failure to

ter. We agree with the district court that there was no waiver.

In support of waiver the appellants rely on *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), and, in particular, on the statement therein that " '[i]f the witness himself elects to waive his privilege, as he may doubtless do, since the privilege is for his protection and not for that of other parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure.' " 340 U.S. at 373, 71 S.Ct. at 442 (quoting *Brown v. Walker,* 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896)) (footnote omitted). Construing *Rogers* we have held that "where a non-indicted witness has waived his Fifth Amendment privilege by testifying before a grand jury voluntarily and with knowledge of his privilege, his waiver extends to a subsequent trial based on an indictment returned by the grand jury that heard his testimony." *Ellis v. United States,* 416 F.2d 791, 805 (D.C.Cir.1969). At the same time, however, we cautioned that "[t]he privilege of course remains as to matters that would subject the witness to a 'real danger' of further crimination." *Id.* at 802 (quoting *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). Because Hartwell never disclosed at trial that the testimony he was offering might be false, any post-trial testimony indicating that it was—even a simple acknowledgment that he wrote the recantation letter—posed "a 'real danger' of further crimination." His trial testimony therefore cannot be construed as a waiver of the privilege he later invoked. *See United States v. Wilcox,* 450 F.2d 1131, 1141 (5th

Cir.1971) ("And so when a witness is asked a question that could show that he had already committed a crime, *i.e.,* perjury at a prior trial, his refusal to answer is permissible almost by the definition of self-incrimination. He is still criminally accountable for his perjury, but he may not be convicted out of his own mouth over his claim of privilege."), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 787 (1972).

 Finally, we conclude the recantation letter was not a waiver of Hartwell's Fifth Amendment privilege. The appellants contend that the letter waived Hartwell's privilege against testifying about the truthfulness of his trial testimony just as the grand jury testimony in *Ellis* was found to have waived a witness's privilege as to its subject-matter. In *Ellis,* however, the court emphasized the importance to its holding of the "credibility and reliability" that necessarily attaches to grand jury testimony. 416 F.2d at 805 n. 37. No such authority supports the contents of the recantation letter, which the district judge accurately characterized as "an undated, unsworn hearsay statement which has not been authenticated," App. exh. 4 at 22, and "wholly lacking in credibility," *id.* at 23; *see also id.* at 20. Accordingly, we cannot accept the letter as a waiver.[3]

For the preceding reasons, the judgment of the district court is

*Affirmed.*

---

immunize Hartwell for testimony he might provide during the new trial proceedings somehow deprived the trial itself of fairness. We fail to see the logic in this. If anything could be said to have affected the trial's fairness it would have been the prosecutorial misconduct before and during trial alleged in the Hartwell recantation letter, not the post-trial lack of immunity. And we cannot accept the allegations of the letter which the district court rejected as unworthy of belief. *See* App. exh. 4 at 20, 22–23; *United States v. Ramos–Oseguera,* 120 F.3d 1028, 1037 (9th Cir.1997) ("The district court's factual finding regarding whether the government did intentionally distort the factfinding process is reviewed for clear error."), *cert. denied,* — U.S. ——, 118 S.Ct. 1094, — L.Ed.2d —— (1998); *cf. United States v. Simmons,* 699 F.2d 1250,

1253 (D.C.Cir.) (Edwards, J, dissenting) (district court finding that "prosecutor's conduct neither denied [defendant's] right to call a defense witness nor deprived him of a fair trial" subject to "clearly erroneous" review), *cert. denied,* 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983).

3. Nor does the record show, as it did in *Ellis,* that Hartwell intended a knowing and voluntary waiver of privilege. *See* 416 F.2d at 806 (noting that defendant "expressly stated to the grand jury that he had consulted a lawyer prior to going before the grand jury; that he wished to cooperate with the Government though he understood he did not have to; that this cooperation was voluntary, and that he knew anything he said could be used against him").