This out-of-time appeal is from convictions for first-degree rape, § 13A-6-61, Ala. Code 1975; first-degree sodomy, §13A-6-63, Ala. Code 1975; and two counts of first-degree kidnapping, § 13A-6-43, Ala. Code 1975. The trial court sentenced the appellant, Donald Phillips, to life imprisonment on each count and ordered that the sentences run concurrently. This appeal followed.
The evidence showed that two men, armed with guns, robbed S.W. and J.G. when they got out of J.G.'s car. After taking their jewelry, cash, and credit cards, the men ordered the couple to remove their clothing and get back into the car. One robber got into the driver's seat with S.W. and the other robber got into the backseat with J.G. As they drove away, two men in a second vehicle followed them to a dark, secluded area. The men forced S.W. out of the car and left J.G. in the car. Two of the men raped and sodomized S.W. while the other men waited. Meanwhile, J.G. retrieved his pistol that was underneath the drivers seat. Just as a third man had begun to penetrate S.W., J.G. got out of the car and shot two of the men. Both men died from the gunshot wounds. The remaining two men fled. At trial, J.G. identified the appellant as one of the two men who had robbed them. He also identified the appellant as the man who had ridden in the backseat with him.
 I.
The appellant argues that the trial court improperly allowed his codefendant, William Sims, to invoke his Fifth Amendment right against self-incrimination. Sims had previously pled guilty to the same charges for which the appellant was being tried, but had not been sentenced at the time of the appellant's trial. Defense counsel stated that he expected Sims to testify that the appellant was asleep in the backseat of the second vehicle during the robbery, rape, and sodomy, and did not wake up until he heard gunshots. (R. at 265-68.)
The trial court allowed Sims to take the stand, and the following occurred in the presence of the jury:
[Defense counsel]: State your name please.
"[Sims]: William Sims.
 "[Defense counsel]: Are you the William Sims who pled guilty to the rape, sodomy, robbery and kidnapping of [J.G.] and [S.W.]?
 "[Counsel for Sims]: Judge, . . . we would like to exercise our Fifth Amendment rights at this time, and we do not desire to testify in these proceedings.
 "The Court: All right. Mr. Sims, you have heard the statement by your attorney. And, of course, ultimately you are the one that has to exercise that right. And I'll ask you at this time do you wish to testify in this matter?
"[Sims]: No, sir, I do not.
 "The Court: Are you saying that you wish to invoke your rights under the Fifth Amendment of the Constitution?
"[Sims]: Yes, sir.
". . . .
 "[Defense counsel]: Are you the William Sims who, in March 28, 1994, rode in the back of [J.G.'s] Ford Escort while [J.G.] was in the backseat naked or almost naked and while [S.W.] was in the front seat naked, and while Jimmy Benjamin was driving that car"
 "[Counsel for Sims]: We exercise the Fifth Amendment rights.
 "The Court: I'll allow the Fifth Amendment rights. And it looks like it will proceed in this fashion. Does Mr. Sims wish to testify about anything in this case?
"[Counsel for Sims]: No, sir, he does not. *Page 683 
 "The Court: Court will allow him to exercise his Fifth Amendment rights [and] not require him to testify."
(R. 336-38.) In denying the appellant's motion to compel Sims' testimony, the trial court stated that Sims' testimony might adversely affect his sentence. In particular, the judge noted that he would be serving as the sentencing judge in Sims' case.
Generally, a defendant who enters a guilty plea waives his constitutional right to remain silent. Brooks v. City ofEnterprise, 644 So.2d 41 (Ala.Cr.App. 1994). However, the issue of whether a defendant retains this right after entering a plea of guilty, but before he is sentenced, appears to be an issue of first impression in Alabama. The Eleventh Circuit Court of Appeals addressed this issue in United States v. Kuku,129 F.3d 1435 (11th Cir. 1997), cert. denied, ___ U.S. ___,118 S.Ct. 2071, 141 L.Ed.2d 147 (1998). In Kuku, the court stated:
 "The Government responds that [the codefendant] could properly invoke the Fifth Amendment because information elicited from [him] could have, adversely affected his sentence.
". . . .
 "We agree and hold that a defendant retains the Fifth Amendment privilege against self-incrimination prior to sentencing, despite having entered a guilty plea, because of the possible impact that compelled testimony may have on the defendant's yet undetermined sentence."
Id. at 1437-38. See also United States v. Bahadar, 954 F.2d 821
(2nd Cir.), cert. denied, 506 U.S. 850, 113 S.Ct, 149,121 L.Ed.2d 101 (1992), United States v. Hernandez, 962 F.2d 1152
(5th Cir. 1992), United States v. Lugg, 892 F.2d 101 (C.A.D.C. 1989) (holding that a defendant retains his Fifth Amendment privilege against self-incrimination after entering a plea of guilty but before sentencing). But see United States v. Mitchell,122 F.3d 185, 191 (3d Cir. 1997), cert. granted, ___ U.S. ___,118 S.Ct. 2318, 141 L.Ed.2d 693 (1998) (holding that "the privilege against self-incrimination is not implicated by testimony affecting the level of sentence").
The appellant argues that Sims' sentence would not have been greater if he had testified that the appellant did not participate in the crime. However, the expected testimony could have expressly concerned Sims' participation in the crime. Even the trial court acknowledged that Sims' testimony could have had an effect on Sims' yet undetermined sentence. Furthermore, Sims might later have sought to withdraw his guilty plea or his conviction might have been reversed on appeal. We agree with and adopt the reasoning in Kuku. Therefore, we find that the trial court properly allowed Sims to invoke his Fifth Amendment rights.
The appellant also argues that the trial court improperly allowed the State to ask questions that assumed facts not in evidence. During cross-examination of the appellant, the following occurred:
 "[Prosecutor]: And y'all had been smoking pot all day, is that correct?
"[Appellant]: Yes, ma'am.
 "[Prosecutor]: So if the coroner did not find any drugs in their system —
 "[Defense counsel]: I object, Judge, unless she is going to be testifying to things that are not in evidence, and I object to it.
 "The Court: Well, I don't know. I'll have to hear the question first.
 "[Prosecutor]: You said they had been smoking pot all day, is that right?
"[Appellant]: Yes, ma'am.
 "[Defense counsel]: I move to strike that question as it did discuss things that are not in evidence.
"The Court: Overruled.
 "[Defense counsel]: On grounds that it's prejudicial to my client.
 "[Prosecutor]: Is there any reason that you can think of that the coroner would not have found pot or drugs in their system?
"[Defense counsel]: Objection, again, Judge.
"The Court: Overruled. *Page 684 
"[Appellant]: No, I don't."
(R. 329-331.)
Although the appellant correctly asserts that a question that assumes facts not in evidence is objectionable, the question is improper only if it: "assume[s] a fact in controversy." Crosslinv. State, 489 So.2d 680, 684 (Ala.Cr.App. 1986) (emphasis added).
 "An excellent statement, of this rule is found in C. Gamble, McRoy's Alabama Evidence, § 121.06 (3d ed. 1977): `As a general rule, a question to a witness which assumes the existence a material fact, to which he has not testified, is improper. . . . This rule against suggestive questions is applicable on both direct and cross-examination. It has been stated that the reason for prohibiting such questions is to avoid misleading the jury and the witness.'"
Id. (emphasis added).
The appellant testified about the use of marijuana to show that he was asleep in the backseat of the car when the offense was committed. Whether the coroner found evidence of drugs in the bodies of the deceased perpetrators was immaterial to the issue of whether the appellant was asleep during the commission of the offense. The only issue to be resolved by the jury in this case was whether the appellant participated in the crime. See, e.g.,Rose v. State, 598 So.2d 1040, 1043 (Ala.Cr.App. 1992). J.G. identified the appellant as an active participant in the crime. Both J.G. and S.W testified that four men were involved in the crime. Two men were killed, Sims pled guilty, and the appellant did not deny that he was with those men on the night of the crime because the prosecutor's question did not concern a material issue in this case, the trial court properly overruled the appellant's objection.
Furthermore, error, if any, in overruling the appellant's objection was harmless. "After reviewing the entire record, we conclude that `the jury's verdict was based on the overwhelming evidence of guilt and was not based on any prejudice'" resulting from the prosecutor's question. Wilson v. State, 651 So.2d 1119,1120-21 (Ala.Cr.App. 1994). Additionally, the hypothetical questions were an extremely small part of a lengthy trial. "[A] single, isolated statement" is less likely to prejudice the outcome of a trial than "extensive or repetitive comments."Baxter v. State, 723 So.2d 810 (Ala.Cr.App. 1998) (citations omitted); Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133,20 L.Ed.2d 81 (1968). There was no further reference to this subject. "Under these circumstances, we find that [any] error in permitting the prosecutor to ask the question over defense counsel's objection was harmless." Wilson, 651 So.2d at 1121. Seealso Rule 45, Ala.R.App.P.
Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and BROWN, JJ., concur.