# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

 v.

$71,919.00 United States
Currency et al.

June 9, 2004

Case No. (Law) 192700

BY JUDGE R. TERRENCE NEY

 This matter comes before the Court pursuant to the Commonwealth's Motion to Compel the Production of Documents filed against Mr. Trung Ma in connection with a civil forfeiture proceeding. Ma has refused to produce the requested discovery items, asserting that the compelled production of these items would violate his Fifth Amendment privilege against self-incrimination.

## *Facts*

 Between June 1999 and December 1999, members of the Fairfax County Police Department, acting in an undercover capacity, placed numerous bets with Ma. See *Commonwealth's Bill of Particulars*, & 1.

 On December 13, 1999, Fairfax County police officers executed a search warrant at Ma's residence where they discovered Ma in the process of taking illegal bets on sporting activities. See *Commonwealth's Bill of Particulars*, & 2. The police seized $1,919.00 in United States currency, keys for safety deposit boxes, telephones, tape recorders, computer equipment containing files related to gambling, and other documents related to Ma's alleged gambling operation. See *Commonwealth's Bill of Particulars*, & 5.

 On December 14, 1999, the police executed two additional search warrants on the safety deposit boxes. See *Commonwealth's Bill of Particulars*, && 5 & 6. In one box the police seized $50,000 in U.S. currency, forty-one gold bars, miscellaneous jewelry, and documents. See *Commonwealth's Bill*

*of Particulars*, & 5. In the other box, the police seized $20,000, two gold bars, three watches, and various documents. See *Commonwealth's Bill of Particulars*, & 6.

On June 6, 2000, Ma pleaded guilty to conducting an illegal gambling operation in violation of § 18.2-328 of the Virginia Code.[1] Pursuant to the plea agreement, Ma was granted immunity from any future prosecution or criminal sanctions in the Commonwealth arising out of his illegal gambling activities. The forfeiture of Ma's property was not included in the plea agreement, nor was disposition of the seized property provided for in the Court's sentencing Order.

On January 2, 2001, the Commonwealth filed an information pursuant to §§ 18.2-336 and 19.2-369 of the Virginia Code[2] seeking forfeiture of the $71,919.00 in currency, 43 gold bars, and other miscellaneous items obtained from Ma's residence during the execution of various search warrants. In support of its Petition, the Commonwealth alleged that because neither Ma nor his wife was employed for the two years prior to the date Ma's property was seized by police,[3] the seized items were the product of Ma's illegal gambling operation.

On January 29, 2003, the Commonwealth served on Ma a Request for the Production of Documents seeking documents "demonstrating proof of income by [Ma]" for the period of January 1, 1996, through December 31, 1999. Specifically, the Commonwealth requested "pay stubs, canceled checks, letters

---

[1] Section 18.2-328 of the Virginia Code provides that "the operator of an illegal gambling enterprise, activity, or operation shall be guilty of a Class 6 felony. However, any such operator who engages in an illegal gambling operation which (i) has been or remains in substantially continuous operation for a period in excess of thirty days or (ii) has gross revenue of $2,000 or more in any single day shall be fined not more than $20,000 and imprisoned not less than one year nor more than ten years."

[2] Section 18.2-336 of the Virginia Code provides that "all money, gambling devices, office equipment, and other personal property used in connection with an illegal gambling enterprise or activity, and all money, stakes, and things of value received or proposed to be received by a winner in any illegal gambling transaction, which are lawfully seized by any law-enforcement officer or which shall lawfully come into his custody, shall be forfeited to the Commonwealth by order of the court in which a conviction under this article is obtained."

Section 19.2-369 of the Virginia Code provides that "if any statute provides for the forfeiture of any property or money, or if any property or money be seized as forfeited for a violation of any of the provisions of this Code, and a different mode of enforcing the forfeiture is not prescribed, in order to enforce the same, the attorney for the Commonwealth for the county or city wherein the forfeiture was incurred shall file in the clerk's office of the circuit court of his county or city an information in the name of the Commonwealth against such property or money by name or general designation."

[3] See *Commonwealth's Bill of Particulars*, & 3.

of employment," or any other documents demonstrating that Ma was employed or earning income during the relevant time period. See *Commonwealth's Request for Production of Documents*, # 1. The Commonwealth also sought production of any "documents regarding ownership, rental, or use of any safety deposit boxes," as well as any federal or state income tax returns Ma filed during the relevant time period. See *Commonwealth's Request for Production of Documents*, # 3.

After Ma failed to provide discovery responses, the Commonwealth filed this Motion to Compel Production of Documents. Over a year has passed since the Commonwealth served Ma with its Request for Production of Documents.

In response to the motion, Ma argues that the Commonwealth cannot compel him to produce any of these documents, as the act of production alone violates his Fifth Amendment right against self-incrimination. Notwithstanding the civil nature of the case, Ma contends that the production of the requested documents may unconstitutionally expose him to further criminal prosecutions and/or sanctions.[4]

## Analysis

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const., Amend 5.

As the United States Court of Appeals for the Fourth Circuit has noted, "the privilege against self-incrimination, one of our most cherished fundamental rights, is jealously guarded by the courts." *North River Ins. Co. v. Stefanou*, 831 F.2d 484, 486 (4th Cir. 1987). It protects an individual not only from involuntarily becoming a witness against himself in a criminal proceeding but also from answering specific allegations in a complaint or filing responses to discovery requests in a *civil* action where the responses, or the act of production itself,[5] might incriminate him in future criminal actions. *North River Ins. Co.*, at 486-87.

Moreover, particularly with respect to civil *forfeiture* actions, although Virginia courts have defined such actions as non-criminal in form,[6] the Fifth

---

[4] This argument has not been briefed by either party, but rather was first raised at oral argument on April 16, 2004.

[5] *See e.g. Andresen v. Maryland*, 427 U.S. 463, 473-74 (1976) (" The Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information." )

[6] *Quidley v. Commonwealth*, 190 Va. 1029, 1036, 59 S.E.2d 52, 56 (1950) (" the proceeding to forfeit property is against the property and not against the owner of the property or any other person . . . it is not a criminal proceeding. It is a civil case." ); *see also Jenkins v.*

Amendment privilege against self-incrimination has nonetheless been held to apply in such actions,[7] and, to some extent, to discovery requests made by the government in connection with such actions.[8]

Hence, given the applicability of the Fifth Amendment in forfeiture actions and Ma's invocation of his privilege against self-incrimination in response to the Commonwealth's discovery requests, the issue before the Court is whether Ma is entitled to invoke his Fifth Amendment privilege against self-incrimination, given his guilty plea in the underlying criminal action. Specifically, the Court must determine whether Ma's guilty plea acts as a waiver of his protections against self-incrimination, and if not, to what extent, if any, the Fifth Amendment protects Ma's compelled production of the documents requested by the Commonwealth.

1. *Guilty Plea; Waiver of Fifth Amendment Rights*

In the underlying criminal proceeding, Ma pleaded guilty to conducting an illegal gambling operation in violation of § 18.2-328 of the Virginia Code. In exchange for his plea, the Commonwealth granted Ma immunity from further prosecution or criminal sanctions arising out of his illegal gambling activities. As noted previously, the plea agreement did not include a provision for the forfeiture of Ma's property.

Given Ma's guilty plea and the accompanying immunity from further criminal sanctions, the Commonwealth asserts that Ma has effectively waived his Fifth Amendment privilege in the present civil forfeiture action.[9]

---

*Commonwealth*, 13 Va. App. 420, 422, 411 S.E.2d 841, 842 (1991) (although forfeiture is "related to criminal activity, forfeiture is neither 'penalty' nor 'punishment' for an offense.")

[7] *United States v. United States Coin and Currency*, 401 U.S. 715 (1971) (" proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, are in their nature criminal for Fifth Amendment purposes."), citing *Boyd v. United States*, 116 U.S. 616 (1886).

[8] *See Boyd*, 116 U.S. at 634-35 (" Compulsory production of the private books and papers of the owner of goods sought to be forfeited . . . is compelling him to be a witness against himself within the meaning of the fifth amendment. . . ."); *but see Fisher v. United States*, 425 U.S. 391 (1976), where the Supreme Court of the United States significantly narrowed the scope of *Boyd* and held that "the Fifth Amendment protects against 'compelled self-incrimination, not (the disclosure of) private information'." *Fisher* at 401. The Court further held that "the Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence, but applies only when the accused is compelled to make a Testimonial Communication that is incriminating." *Id.* at 408.

[9] In addition, during oral argument on April 16, 2004, the Commonwealth argued that Ma's admission to his probation officer that he was unemployed during the relevant time period lends further support for its position that Ma has waived his Fifth Amendment privileges in the

In addressing the issue of whether Ma's plea constitutes a waiver of his Fifth Amendment protections against self-incrimination, the Court recognizes that "the consequences of pleading guilty to an offense are far reaching." *Edmundson v. Commonwealth*, 13 Va. App. 476, 477, 412 S.E.2d 727, 728 (1992) (defendant who pleaded guilty was held to have waived Fifth Amendment privilege against self-incrimination during sentencing phase and therefore was required to answer prosecutor's questions regarding a discrepancy in the pre-sentence report, a matter deemed "relevant to the case in which he pleaded guilty." ) As the Court of Appeals of Virginia noted in *Edmundson v. Commonwealth*, "[by] entering a plea of guilty, a defendant waives several fundamental constitutional rights," including the privilege against self-incrimination with "regard to matters germane to that offense." *Id.* at 478. *See also Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (" A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." )

In response, Ma argues that *Edmundson* is not applicable to the civil forfeiture action here, as it, unlike the sentencing phase of a criminal case, is a wholly separate proceeding from the underlying criminal action.

In addition, Ma argues that the Court of Appeals of Virginia's decision in *Edmundson* has been seriously undermined by the more recent Supreme Court of the United States decision in *Mitchell v. United States*, 526 U.S. 314 (1999), where the Court held that, in the federal criminal system, neither a defendant's guilty plea nor the colloquy preceding the plea functions as a waiver of the self-incrimination privilege at sentencing.

A careful reading of *Mitchell*, however, reveals that the Court's holding is more narrowly defined than that suggested by Ma and is distinguishable from the facts of this case.

In *Mitchell*, Amanda Mitchell was charged with one count of conspiring to distribute five or more kilograms of cocaine and three counts of distributing cocaine within 1,000 feet of a school or playground. *Id.* at 317. Without any plea agreement, Mitchell pleaded guilty to all four counts, but reserved the right to contest the drug quantity attributable to her under the conspiracy count, a fact to be proven by the Government at the sentencing hearing. Before

---

pending forfeiture action to which he would otherwise be entitled. In response, Ma noted that prior admissions such as the one he made to his probation officer do not abrogate a witness' privilege to invoke his Fifth Amendment privilege against self-incrimination at a subsequent hearing. *See McCready v. Commonwealth*, 212 Va. 540, 186 S.E.2d 88 (1972) (prior testimony at both a preliminary hearing and before a grand jury held not to prevent witness from invoking Fifth Amendment privilege at trial); *see also Cullen v. Commonwealth*, 65 Va. (24 Gratt.) 624 (1873), and *Temple v. Commonwealth*, 75 Va. 892 (1881).

accepting Mitchell's plea, the District Court made inquires pursuant to Rule 11 of the Federal Rules of Criminal Procedure and informed Mitchell that the "range of punishment here is very complex because we do not know how much cocaine the Government is going to be able to show you were involved in." *Id.* at 317. The Court further advised Mitchell that she faced "serious punishment depending on the quantity involved" for the conspiracy. *Id.*

At the sentencing hearing, Mitchell did not present evidence, nor did she testify to rebut the Government's evidence about drug quantity. *Id.* at 319. After the hearing, the District Court ruled that Mitchell had no right to remain silent with respect to the details of her crimes given her guilty plea and sentenced Mitchell to the statutory minimum of ten years of imprisonment. *Id.*

The Court of Appeals for the Third Circuit affirmed the sentence, finding that Mitchell, "by voluntarily and knowingly pleading guilty to the offense ... waived her Fifth Amendment privilege." *Mitchell v. United States*, 122 F.3d 185, 189 (3d Cir. 1997). The Third Circuit acknowledged, however, that other Circuits have held that a witness can retain the privilege at sentencing, especially "if his or her testimony might be used to enhance his or her sentence." *Id.* at 190.

The Supreme Court of the United States reversed, holding that Mitchell's guilty plea did not serve as a waiver of her Fifth Amendment privilege against self-incrimination at sentencing. Specifically, the Court found that where "the witness has pleaded guilty to a crime charged but has not been sentenced, his constitutional privilege remains unimpaired." *Mitchell*, 526 U.S. at 326; *see also Estelle v. Smith*, 451 U.S. 454 (1981), where the Court previously rejected the proposition that where a sentence has yet to be imposed, "incrimination is complete once guilt has been adjudicated." *Estelle*, 451 U.S. at 454.

In reaching its decision, the Court reasoned that "*where a sentence has not yet been imposed* a defendant may have a legitimate fear of adverse consequences from further testimony." *Mitchell*, 526 U.S. at 326 (emphasis added). The Court further found that "liability for punishment continues until sentence has been imposed, and so does the [Fifth Amendment] privilege," *id.*, at 325, but where there can be no further incrimination, namely, where sentence has been fixed and the judgment of conviction has become final, there can be no basis for the assertion of the privilege. *Id.* at 326.

The facts in *Mitchell* are clearly different than the facts here. First, unlike Mitchell, Ma entered a plea agreement which provided Ma with immunity and thus significantly narrowed, if not removed, Ma's potential for criminal liability. Second, Ma has already been sentenced for the crime to which he pleaded guilty, thus removing any further punishment that can be visited upon him by reason of further testimony.

In addition, it is well established that a witness, *in a single proceeding*, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. *Id.* at 321. Although Ma argues that a civil forfeiture action is a wholly separate proceeding from the underlying criminal action, the Court finds that such actions, as here, may be inextricably tied to a finding of criminal conduct on the part of a defendant, especially in cases involving seizure of property or contraband pursuant to a valid search warrant. *See, e.g., Commonwealth v. B & B Amusement,* 19 Va. Cir. 122 (Chesterfield County, 1990) (where defendant pleaded guilty to an indictment of illegal gambling and a forfeiture is claimed, a separate civil hearing must be held on the forfeiture); *see also* Va. Code Ann. § 19.2-369 (2003). Thus, to the extent that a civil forfeiture action arises out of the underlying criminal conduct and guilty plea, the Court finds that its classification as a completely separate proceeding from the underlying criminal trial is not the determining consequence for purposes of the Fifth Amendment.[10]

Lastly, the "justifications for the rule of waiver in the *testimonial* context are evident. A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry." *Id.* at 322.

The Court finds that a similar waiver analysis is applicable to guilty pleas entered into prior to the adjudication of a civil forfeiture action, where sentence has already been imposed for the underlying criminal conduct. Under such circumstances, a defendant should not be permitted to invoke the Fifth Amendment in a subsequent civil forfeiture action and in effect "pick and choose" which aspects of the underlying charge to disclose or not disclose. A contrary rule, especially where a defendant is no longer exposed to criminal liability by virtue of his plea, "would open the way to distortion of facts" and create a "positive invitation to mutilate the truth a party offers to tell." *Id.*

In sum, a forfeiture proceeding, such as the one pending against Ma, is appropriate to afford the Commonwealth relief against "property employed in defiance of the laws of the State." *Jenkins v. Commonwealth,* 13 Va. App. 420, 422, 411 S.E.2d 841, 842 (1991). As the institution of such actions may be inextricably intertwined with, or extensions of, a finding or plea of guilt

---

[10] In addition, the Court notes that in many instances, a civil forfeiture action and a criminal action are simultaneously filed against a defendant. In such cases, in order to protect a defendant's Fifth Amendment privilege against self-incrimination, courts have stayed the civil action or entered a protective order pending the final adjudication of the criminal action so as to limit or remove the defendant's exposure to any future criminal liability. *See e.g., United States v. Kordel,* 397 U.S. 1 (1970).

with respect to certain criminal actions,[11] the Court finds that Ma's guilty plea, and in effect his waiver of his Fifth Amendment privilege against self-incrimination, extends to the current forfeiture action pending against him.

## *Conclusion*

The Court finds that Ma's guilty plea in the underlying criminal action, where sentence has been imposed, acts as a waiver of his Fifth Amendment privilege against self-incrimination in the pending civil forfeiture action with "regard to matters germane to [the underlying] offense." *Edmundson*, 13 Va. App. at 478 (1992). As the records sought by the Commonwealth in its Requests for Production of Documents, namely, documents demonstrating proof of income or employment and federal and state tax returns, are germane to Ma's illegal gambling activities and, in particular, the issue of whether the items seized from Ma's residence were used in connection with, or derived from, those activities, Ma is not entitled to invoke his Fifth Amendment privilege in response to the Commonwealth's discovery requests.[12]

As the Court finds that Ma's guilty plea served to waive his Fifth Amendment privilege against self-incrimination with respect to the Commonwealth's discovery requests in the pending civil forfeiture action, the Court need not address the extent to which the Fifth Amendment protects Ma's compelled production of the documents requested by the Commonwealth.

For these reasons, this Court grants the Commonwealth's Motion to Compel the Production of Documents with respect to its requests for (1) proof of income or employment, including "pay stubs, canceled checks, letters of employment, or any other document showing that defendant was employed"

---

[11] *See e.g.*, Va. Code Ann. § 19.2-386.1, which provides, in relevant part, that "an action against any property subject to seizure under the provisions of § 18.2-46.9 [authorizes seizure of property used in connection with or derived from terrorism] or § 18.2-249 [authorizes seizure of property used in connection with or derived from illegal drug transactions] shall be commenced by the filing of an information in the clerk's office of the circuit court." *See also* Va. Code Ann. §§ 18.2-336 and 19.2-369 (2003), *supra*.

[12] In addition, to the extent Ma maintains concerns that compliance with the Commonwealth's discovery requests may expose him to future criminal liability, the Court finds that such concerns could be more appropriately met by *specific objections* sufficient to provide the court with a record upon which to decide whether the privilege has been properly asserted as to each of the Commonwealth's document requests. *See e.g., North American Mortgage Investors v. Pomponio*, 219 Va. 914, 918, 252 S.E.2d 345, 348 (1979) (" There is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings." ); *see also North River Ins. Co.*, 831 F.2d 484 (1987) (the mere "blanket refusal to answer questions does not suffice to raise constitutional concerns." ) *Id.*, at 486.

from January 1, 1996, through December 31, 1999; (2) "copies of any federal or state tax returns or other tax documents filed by the defendant" from January 1, 1996, through December 31, 1999; and (3) copies of any documents regarding ownership, rental, or use of any safety deposit boxes by the defendant from January 1, 1996, through December 31, 1999.

## *Order*

This matter came before the Court on March 5, 2004, and April 16, 2004, pursuant to the Commonwealth's Motion to Compel Production of Documents filed against Defendant Trung Ma. For the reasons stated in this Court's opinion letter dated June 9, 2004, which is attached hereto and made a part hereof, the Commonwealth's motion is hereby granted.